# Foye *v.* Lilley Coal & Coke Company, Appellant.

*Contracts — Construction contracts — Extra work — Manholes— Cost—Recovery—Instructions to the jury.*

1. A contractor entered into a contract with a mining company for certain construction work, wherein it was provided that the contractor should undertake "any extra work that may be required by the engineer arising out of a modification of the plans and details that may appear necessary." Attached to the contract were

the plans and specifications on which the contractor had bid as well as a blue print calling for certain manholes which were not called for by the contract or specifications. At the request of defendant's engineer plaintiff later built the manholes and brought an action to recover the cost thereof after he had been paid the amount of his original bid. There was testimony in the case tending to show that the blue print calling for the manholes was attached to the contract in order that they could be conveniently located in case the company should desire that they should be built. Defendant's engineer testified that he regarded the manholes not as part of the original contract but as extra work and stated that he allowed plaintiff $182 therefor. Defendant requested the court to charge the jury that the manholes were part of the regular work contemplated by the contract and that the amount allowed by the engineer in payment therefor was a mere gratuity. The trial judge refused so to charge the jury. *Held,* no error.

2. Where in such case, it was provided that the contractor should abide by the price or prices for extra work fixed by defendant's engineer, "provided he commence work with a full knowledge of the same," but where it appeared that the price was not fixed by the engineer before plaintiff undertook the work, and that plaintiff was finally told by the engineer to go ahead with the work and keep account of the cost, it was not error to permit the plaintiff to testify to the value and price of the work in connection with the construction of the manholes.

3. Mere readiness to perform an accord or a tender of performance, or even part performance and readiness to perform the rest will not constitute accord and satisfaction as a defense to an action; it must appear that the matter agreed upon was accepted in satisfaction of the debt.

4. Where in such case, it appeared that plaintiff incurred extra expense on account of a mistake in the plans relative to elevation of the work, which each party claimed was owing to the fault of the other, the contention of defendant that everything involved had been amicably settled and adjusted by the agreement to pay plaintiff $400 was without merit, where it did not appear that plaintiff had accepted the $400 in satisfaction of his demand.

5. In such case where it was provided that plaintiff should receive a bonus of $40 for each day the work should be completed prior to November 1, 1913, and should pay the defendant as liquidated damages a like sum for each day the work remained unfinished after that date, and twenty-five days beyond the time limit was required, the plaintiff's liability under the contract was not absolute, without regard to the cause of the delay, and the trial judge properly charged the jury that if any of the delay was in con-

sequence of plaintiff's being required to do extra work, he would not be chargeable under the terms of the contract to this extent, and that defendant would be entitled to a set-off for delay if the jury should find that such "delay was due to plaintiff's own neglect in completing the work." The use of the word "neglect" did not necessarily import culpable misconduct on the part of the plaintiff and meant no more than omission or failure.

Argued Oct. 7, 1915. Appeal, No. 75, Oct. T., 1915, by defendant, from judgment of C. P. Washington Co., May T., 1914, No. 230, on verdict for plaintiff, in case of F. J. Foye v. Lilley Coal & Coke Company. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Assumpsit for extra work furnished under a construction contract. Before IRWIN, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,633.25 and judgment thereon. Defendant appealed.

*Errors assigned* were answers to points, rulings on evidence and instructions to the jury.

*T. Jeff Duncan,* with him *Guy Moffit,* and *C. L. V. Acheson* and *J. Boyd Crumrine,* of *Acheson & Crumrine,* for appellant.

*Harry L. Williams,* with him *Harry A. Cottom,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 3, 1916:

The Lilley Coal & Coke Company, appellant, with a view to the development of its coal mines determined upon the construction of two slopes from the surface to the coal, and to this end caused plans and specifications to be made of the proposed work, and invited bids therefor. A copy of these plans and specifications was furnished to appellee, whose business was that of general

contractor. Basing his estimate on the plans furnished him, the appellee submitted a bid for the work in the sum of $51,800.00, which was accepted. Later on, and before the execution of any formal contract between the parties, at the suggestion or perhaps requirement of the mine inspector, the appellant company, without notice to the appellee, decided to supplement its plan by adding to them some sixteen shelter or manholes in the slopes, and had its engineer prepare a correct blueprint showing their character and location. On the 1st day of May, 1913, the parties met and entered into a formal written contract for the performance of the work on the basis of the accepted bid, and the plans and specifications submitted which were attached to and made part of the contract, as was also the corrected blueprint showing the sixteen manholes. The contract provides, among other things, "that the contractor must be prepared to undertake any extra work that may be required by the engineer arising out of a modification of the plans and details that may appear necessary, or from any unforeseen or unlooked for circumstances, and for such work will be paid at the contract rates for work of a similar character, or, if the extra work is of a class on which no rate is fixed in the contract, the engineer shall fix such a price or prices as he shall deem just and equitable, and the contractor shall abide by such price or prices, provided he commence work with a full knowledge of the same." The appellee completed his contract and has been paid the amount of his original bid; but, insisting that extra work had been required of him, he demanded compensation therefor. To enforce this demand he brought his action at law, and the present appeal is from the judgment he recovered therein.

On the trial of the case the defendant submitted the following point, "Under the terms of the contract entered into May 1, 1913, between F. J. Foye, plaintiff, and the Lilley Coal & Coke Company, defendant, the blue print attached to said contract was a part thereof, and

the said blue print so attached to said contract showing
that shelter holes were required to be placed on each
side of the slope every forty-five feet, the plaintiff, F. J.
Foye, was, under the terms of said contract, required to
construct said shelter holes, and is therefore entitled to
receive no additional compensation by reason of any
work done or materials furnished in or about the con-
struction of any shelter holes in the slopes referred to
in said contract." The refusal of the court so to in-
struct is the subject of the first assignment of error. It
was the plaintiff's contention that notwithstanding the
blue print was attached to and made part of the written
contract, it had not been so attached with a view to re-
quire of him the construction of the manholes without
other compensation than his original bid, but that its
only purpose was to define and locate these manholes
should the company conclude to construct them, or have
them constructed. The evidence in the case largely sup-
ported this contention, and as we view the case, it was
convincing. It does not rest alone on the testimony of
the plaintiff. Supported as that is by the general facts
and circumstances of the case, more particularly the
dealings between the parties, strongly evidencing a mu-
tual understanding of the contract conforming to the
plaintiff's contention, it would have been quite sufficient
to carry the question to the jury. But there was far
more. The defendant's engineer who drew the plans
and specifications for the work, including the amended
blue print showing the manholes, that was attached to
the written agreement, and who was in charge of the
work, was called as a witness by the defendant. He
testified that it was not until after the slope had been
driven in for a considerable distance that he first spoke
to the plaintiff in regard to the manholes; that his pur-
pose in speaking with him was to learn at what price
the plaintiff would be willing to do this additional work;
that they disagreed as to what would be a fair price, he,
the engineer, offering $10.00 for each hole and the plain-

tiff demanding $25; that later, after plaintiff had completed several of the manholes, he proposed to allow plaintiff at the rate of $13.00 for each, that price being based, as he said, upon the clause of the contract that specified that work of a similar nature is to be paid for at the proportionate amount of work to be done, and that later, in the estimate he made of the work done, he allowed the plaintiff $182.00 for fourteen manholes, regarding them as extra work, to be paid for as extra work under the contract.   His language was, "I didn't regard the shelter holes as being a part of the original contract, but I did regard them as being extra work."   It was not pretended that there was any understanding or agreement with the plaintiff that he was to receive compensation on any such basis as that allowed by the engineer, or that plaintiff received this money from the defendant company with any understanding or agreement on his part that it was full payment.   Such being the evidence in the case—and much more of like tenor could be added —to have affirmed the point submitted would have been manifest error.   The first assignment is overruled.

The second assignment has still less to support it.   A point was submitted to the effect that the $182.00 allowed by the engineer and paid by the company, was a mere gratuity, and in no way a recognition of liability on the part of the defendant company to the plaintiff on account of the construction of the manholes.   This point admitted of no other answer than refusal by the trial judge.   This assignment is overruled.

The plaintiff, called on his own behalf as a witness, was permitted without objection to testify to the value and price of work in connection with the construction of the manholes.   At the conclusion of this testimony the court was asked to strike it out.   The refusal of the motion is the subject of the third assignment.   The reasons urged in support of the motion, if any, do not appear in the record.   The gist of the point, as we gather it from the argument in the brief is, that even though it

be conceded that the construction of the manholes was not specifically required of the plaintiff under the contract, yet it was such extra work as the engineer might require under its terms, to be paid for by the company at the rates therein provided for extra work, and that the engineer having classified the work done in connection therewith as extra work, and the price therefor having been fixed and determined by the engineer, that such determination was conclusive on the plaintiff, and therefore the testimony as to the cost of the construction was inadmissible. The argument overlooks a very material part of the section of the contract that is here appealed to. It is there expressly stipulated that "the contractor shall abide by such price or prices provided he commence work with a full knowledge of the same." There is no pretense that the plaintiff before entering upon the construction of the holes was advised of the prices he would be allowed. The price was a subject discussed between the plaintiff and the engineer without a conclusion being reached. The engineer nowhere in his testimony says that he ever told the plaintiff that he would be allowed a certain price and no more; on the other hand, the plaintiff testified that he was told by the engineer to proceed with the work and keep an account of the cost. The testimony was clearly admissible, and the third assignment is accordingly overruled.

After one of the slopes had been driven in for quite a distance a mistake was discovered in the alignment or elevation, for the correction of which much additional work was required for which the plaintiff claims compensation. Each party attributes the mistake to the other, and there was further dispute as to the amount of work that was required in the correction. Both questions were submitted to the jury under instructions not the subject of exception or complaint, except in the particular we are about to refer to. It was the defendant's contention that everything involved had been amicably settled and adjusted; in other words, it pleaded pay-

ment by accord and satisfaction, with a view to exclude the plaintiff's demand for anything in excess of $400.00 which was paid plaintiff, and which defendant claimed was the consideration of the alleged settlement. The company's engineer had testified that in an interview with the plaintiff in regard to the cost of the increased work made necessary by the mistake in the alignment, "I asked him how much it was worth; he said $400.00. I told him that I would allow that amount; I asked him if he wanted payment of it at that time; he said he did not. This is the substance of the conversation. I agreed to pay him the $400.00." According to the plaintiff's testimony the inquiry in the conversation as to the cost or worth related merely to the excavation that had been required, not taking into account the concrete and other work that had been done; that the engineer tendered him a check for the $400.00; that he replied, "Well, hold your check a while," and the conversation there dropped. Whether the narrative of the conversation as given by the engineer, or as given by the plaintiff, be accepted the result must be the same. It lacks the essential elements of accord and satisfaction however we view it. "Accord and satisfaction is a good plea by a debtor to the action of his creditor, but the legal notion of accord is a mere agreement on a new consideration to discharge the debtor. And it is not enough that there be a clear agreement or accord, and a sufficient consideration, but the accord must be executed. The plea must allege that the matter was accepted in satisfaction. Mere readiness to perform the accord or a tender of performance, or even a part performance and readiness to perform the rest, will not do. Such is the law between debtor and creditor. The exception to these rules is where a number of creditors agree to accept of a common debtor a composition amounting to less than their entire demands": Hearn v. Kiehl, 38 Pa. 147, 149. There is nothing in the testimony of either witness that imports an acceptance by the plaintiff of the

offer made.   Indeed there is nothing that in any way supports the contention that the offer was made by way of compromise of a disputed claim.   The engineer, referring to the extra work done, asked the plaintiff what it was worth; the plaintiff referring, as he said, to the excavation work alone replied $400.00.   Whereupon the engineer without asking any abatement, or denying in any way plaintiff's right, at once tendered a check for the amount named by the plaintiff.   Compromise always imports a mutual yielding of opposing claims.   Here there was no yielding or surrendering of anything on the part of the plaintiff.   So far as can be derived from the conversation, whether we accept the plaintiff's narrative or that of the engineer, the tender was for just what the plaintiff demanded.   In order to constitute an accord and satisfaction it is necessary that money should be offered in full satisfaction of the demand, and be accompanied by such acts and declaration as amount to a condition that the money, if accepted, is accepted in satisfaction, and it must be such that the party to whom it is offered is bound to understand therefrom that if he takes it, he takes it subject to such condition.   Societe Anonyme Pour La Fabrication De La Soie De Chardonnet v. Loeb, Lipper & Co., 239 Pa. 264.   It is only when these things concur, and the money has been actually paid and accepted that accord and satisfaction can be successfully pleaded.   Subsequent payment of money on the claim of the creditor constitutes no estoppel except as the creditor was given to understand, at the time of his acceptance, that the money was paid in full discharge of his cause of action.   The ruling of the court on this branch of the case is the subject of complaint in the fifth assignment.   The ruling of the court with respect to it was correct, and the assignment is overruled.

The written contract provided for the completion of the entire work by 1st of November, 1913, with the further provision that plaintiff was to receive a bonus of $40.00 for each day the work should be completed prior

to that date, and that he was to pay to the defendant, as liquidated damages, a like sum for each day it remained unfinished after that date. Twenty-five days beyond the time limit were required for the completion. The plaintiff offered evidence to show that this delay, to the extent of ten days, was occasioned by error in the alignment for which the defendant alone was responsible. It was defendant's contention that plaintiff's liability under the terms of the contract was absolute without regard to the cause of the delay. The trial judge refused to sustain the defendant's position, and instructed the jury that if any of the delay was in consequence of plaintiff being required to do extra work, for the time so occupied—ten days seem to have been agreed upon—the plaintiff would not be chargeable under the terms of the contract to this extent. Under this instruction a finding that ten days' delay was occasioned by the extra work would give the defendant the right to exact from the plaintiff, or rather apply as a set-off to the latter's demand, $600.00 for a delay of fifteen days. What is here complained of, and all that is complained of, is that in affirming defendant's fourth point which asked for instruction, "that if the work was not completed in all particulars until after 1st November, 1913, the defendant company is entitled to a premium of $40.00 per day for each day after 1st November, 1913, until the entire work contemplated by said contract was completed," the trial court added this qualification, "unless the jury find from the evidence that the delay in completing the contract was occasioned by the extra work which the plaintiff was required to do, and also, gentlemen, you will bear in mind that the defendant company has conceded to the plaintiff ten days after November 1st for the extra work. So that in no event could defendant be entitled to a set-off of more in this case, if you should find that the remaining fifteen days was due to the plaintiff's own neglect in completing this work." It is argued that the use here of the word "neglect" was misleading, and that

the jury might easily understand from this that no penalty was to be imposed unless the failure of the plaintiff to complete the work in time was due to some culpable misconduct on his part, whereas there was no allegation in the case that the plaintiff was guilty of negligence; that it was equivalent to an instruction that the $600.00 for the fifteen days' delay which remained after allowing the ten days claimed by the plaintiff, was only to be allowed the defendant in case the jury found that the fifteen days' delay was the result of misconduct on the part of the plaintiff. Seeing that the plaintiff did not deny liability for delaying the completion of the work, that his only claim was that but for the interference of defendant he would have completed the work ten days earlier than he did, and that therefore but fifteen of the twenty-five days should be charged against him, the instruction that the defendant would be entitled to set off $600.00, that is $40.00 a day for fifteen days, if the jury should find "that the remaining fifteen days' delay was due to the plaintiff's own neglect in completing the work," was wholly superfluous; nevertheless, it was entirely correct, if we except the use of the word "neglect." But why should this be excepted? It certainly should be if it necessarily imports culpable misconduct as the appellant contends; but it does not. As used here, plainly and manifestly it means no more than omission or failure, from whatever cause, to do something that was required under the contract, and it would be a reflection upon the intelligence of the jury to suppose that it was understood by them in any other sense. The objection to its use to say the least savors of hypercriticism. This disposes of the several assignments of error. So far as they have brought the record to our attention we find it free from error. The case was well tried and the judgment is affirmed.