## Pittsburg *v.* Goshorn, Appellant.

*Municipalities—Municipal contracts—Public officers—Compensation
—Paying for office—Illegal contract—Public policy.*

1. Where the councils of a city of the second class in pursuance of
the authority exclusively given to them fix the compensation of the
tax collector at a per centum on his collections, the mayor has no
power to require the person he proposes to appoint collector to enter
into a written contract binding himself to accept for his services a
fixed sum instead of a per centum on the collections as allowed by the
ordinance, thereby reducing his compensation very much below that
which he otherwise would be entitled to. Such a contract whether it is
executory or executed, is contrary to the settled policy of the law as
indicated in the constitutional provision which prohibits a public
officer from contributing or paying any money or other valuable thing
to secure his appointment.

2. A contract against public policy, as distinguished from one merely
ultra vires, is absolutely without any force or effect whatever, so that
it cannot, under any circumstances, be made the basis of a cause of
action. The law when appealed to will have nothing to do with it, but
will leave the parties just in the condition in which it finds them. If
the contract is executed the law leaves the parties in possession of
what each has acquired under it; if executory, it refuses to enforce it.

MESTREZAT and POTTER, JJ., dissent.

Argued Oct. 28, 1910. Appeal, No. 168, Oct. T., 1910,
by defendant, from judgment of C. P. No. 4, Allegheny
Co., First Term, 1910, No. 299, for plaintiff on case stated
in suit of City of Pittsburg *v.* Lawrence R. Goshorn.
Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART
and MOSCHZISKER, JJ. Reversed.

Case stated to determine compensation of the collector
of delinquent taxes of the city of Pittsburg.

From the case stated it appeared that by an ordinance
approved March 8, 1906, councils fixed the compensa-
tion of the collector of delinquent taxes at two-fifths of
five per centum of the amount of delinquent taxes and
water rents collected by him. On June 20, 1906, the
mayor, George W. Guthrie, appointed the defendant,
Lawrence R. Goshorn, collector of delinquent taxes. As

a condition of his appointment the mayor required Goshorn to execute the following agreement:

### "MEMORANDUM OF AGREEMENT

"Made this 20th day of June, A. D. 1906, between the City of Pittsburg, party of the first part, and L. R. Goshorn, party of the second part.

"Whereas, the said party of the second part is an applicant for appointment for the position of Collector of Delinquent Taxes for the City of Pittsburg.

"And whereas, it is mutually agreed that the compensation provided by ordinance is excessive.

"Now therefore, it is mutually agreed between the parties hereto that in case the said party of the second part should receive the appointment, he will accept as full compensation of his services, the sum of six thousand ($6,000) dollars, and pay over to the City Treasurer the amount of the commission allowed by the ordinance, less his compensation as above fixed and the expenses of his offices not to exceed an amount to be audited and adjusted by the City Controller.

"And further, that all collections made by him shall be daily paid over to the City Treasurer.

"In witness whereof, the parties above named have hereunto set their hands and seals.

"(Sig.) L. R. GOSHORN.

"Attest:

"Geo. W. Guthrie."

It appeared from the case stated that Goshorn claimed that the agreement which he signed was without consideration and null and void, and that he was entitled to commissions on collections notwithstanding the contract which he had executed.

The court entered judgment for the plaintiff for $31,649.06, CARNAHAN, J., filing the following opinion:

The defendant, Lawrence R. Goshorn, was collector of delinquent taxes of the city of Pittsburg from July 5,

1906, until April 5, 1909, in virtue of an appointment by George W. Guthrie, mayor, by and with the consent of select council, in accordance with the law providing for the appointment of heads of departments of the city government. During his term of office Mr. Goshorn collected as taxes and water rents an aggregate sum of $4,604,081.63, and has paid to the city, in aggregate, $4,510,613.16. Subsequent to April 5, 1909, in virtue of the powers vested in him as city controller by the charter act of March 7, 1901, Eustace S. Morrow stated an account between the city and Mr. Goshorn, and filed the same of record in this court. On November 26, 1909, Mr. Goshorn paid to the city the sum of $41,406.97, which includes interest from November 17, 1909. This payment is included in the amount, $4,510,613.16, above stated as the aggregate of payments to the city. Mr. Goshorn appealed from the statement of account so filed, and as a result of such appeal, this case stated, in which the city of Pittsburg is plaintiff, and the appellant, Mr. Goshorn, is defendant, has been agreed upon, argued by counsel and submitted.

The amendment to the charter act of the city of Pittsburg, of June 20, 1901, contains this provision in reference to the collector of delinquent taxes:

"The Collector of Delinquent Taxes shall be the head of the department of delinquent taxes. . . . The head of this department shall receive such compensation, either by a stated salary or by fees, as may be fixed by councils."

By ordinance, duly approved by the mayor March 8, 1906, it was provided:

"Section 3. That the compensation of such collector for the collection of all city taxes and water rents hereafter becoming delinquent shall be two-fifths (⅖) of five per centum of the amount of delinquent taxes and water rents by him actually collected and paid into the City treasury; which said five per centum shall be added to all delinquent taxes and water rents hereafter becoming delinquent, as a penalty for non-payment of the same at

the time prescribed by the Act or Acts of Assembly relating thereto; Provided, that the said penalty shall only be collected on the amounts collected by said collector, and shall not be added to any exonerations legally made."

This ordinance was not, during the term of Mr. Goshorn, repealed or amended.

On June 20, 1906, Mr. Goshorn executed and delivered to George W. Guthrie, mayor, a paper of the same date, purporting to set forth an agreement between him and the city of Pittsburg, from which it appears that, at that time, he was an applicant for appointment to the office of collector of delinquent taxes; that it was mutually agreed that the compensation of said officer, as provided by ordinance, was excessive; that he agreed that in case he should receive the appointment, he would accept as full compensation for his services the sum of $6,000; pay to the city treasurer the amount of commissions allowed by ordinance, less the compensation fixed by this agreement, and the expenses of his office not to exceed an amount to be audited and adjusted by the city controller; and that all collections made by the office be daily paid to the city treasurer.

This paper was signed by L. R. Goshorn, attested by Geo. W. Guthrie, and is marked exhibit No. 2, as a part of the stated case. It is not signed by the city of Pittsburg, nor is the official seal of the city attached. Obviously, it was an agreement between the mayor, who was the appointing power, and the defendant, who was an applicant for the appointment; and while it is not stated in the agreement that the sum of $6,000 was to be the compensation for services in full per annum, apparently it was so understood and acted upon.

On the day of which the agreement bears date, namely, June 20, 1906, Mr. Guthrie, as mayor, nominated and appointed Lawrence R. Goshorn, collector of delinquent taxes of the city of Pittsburg, and the appointment was approved by the select council of the city, in accordance with the statute law so provided. Lawrence R. Goshorn

is the L. R. Goshorn, who executed and delivered the agreement marked exhibit No. 2.

Mr. Goshorn, having served his full term as collector, is now called upon to meet a claim of the city that he is short in his account to the extent of $30,476.44. It is this sum for which the city claims judgment, together with interest thereon from November 17, 1909. He replies that he is not indebted to the city for any amount, because, at the time of his appointment, and during the whole of his term, his compensation was fixed by law, namely, by ordinance of councils, pursuant to the provisions of statute law; that the mayor had no authority to change the law by providing for him as a public officer a compensation different from that fixed by law; that the agreement of June 20, 1906 was against public policy, and without valid consideration; and that consequently it is not binding upon him, is void, and of no effect. If he is correct in this contention, it is agreed that judgment shall be entered in his favor, because his commissions for the full term served would equal the amount claimed by the city. If the city is correct in its contention that the defendant is bound by the writing of June 20, 1906, it is agreed that the amount claimed, namely $30,476.44, is the amount for which it is entitled to judgment, with interest as aforesaid.

The mayor had no express authority to act for the city as respects the question of reducing the compensation of a collector of delinquent taxes. The law fixed his compensation. No city officer had authority to change it. But there was no misrepresentation, fraud or compulsion on the part of the mayor. He was the appointing power. He believed that the compensation of the collector of delinquent taxes, as fixed by ordinance, was too great. Goshorn so believed, and stated to the mayor that, should he be given the appointment of collector, he would accept a salary in lieu of commissions, and pay into the treasury all sums collected, less the amount of his salary and certain expenses. The mayor, being satisfied of his

fitness for the office, took him at his word, and appointed him. The mayor did not mislead him in any manner. Goshorn did not accept the appointment under compulsion. He was not forced to assent to the fixed salary in lieu of commissions, as stated in exhibit No. 2. He himself agreed "that the compensation provided by 'ordinance' was 'excessive.' " He desired the appointment, thought the compensation was excessive, agreed to accept less in case of his appointment, and thus secured the appointment. The mayor evidently thought that, by making the appointment with the understanding as to compensation, as provided in exhibit No. 2, he was serving the interests of the city. Goshorn thought so, too, and apparently meant to carry out all that he agreed to do. How can it be said, therefore, that his action was other than voluntary on his part? If, during the term of his office, he had repudiated his agreement of June 20, 1906, and had given notice to the city by word or deed that he intended to claim the compensation fixed by ordinance, and after such notice, the city had continued him in office, his claim should be sustained in law. If, on the contrary, no such notice was given, and the city authorities were thereby led to believe that his compensation was as fixed by exhibit No. 2, he should be estopped from enforcing his claim for commissions now.

What are the facts as disclosed in the stated case? It is not expressly stated that he ever gave such notice, nor is it expressly stated that he did not. But he collected $4,604,081.63 during his term of office, and paid to the city only $4,510,613.16, of which amount the sum of $41,406.97 was paid more than six months after the expiration of his term. There was nothing, therefore, in his retention of moneys to put the city on notice of an intention on the part of the collector to claim commissions, and thus repudiate his agreement. He did not merely retain the exact amount of his commissions. His retention of moneys far exceeded all commissions to which he could possibly be entitled under the ordinance.

Nothing else, as bearing upon the question of notice, appears in the stated case. The situation, therefore, is this: Goshorn makes no claim that, during his term of office, he ever gave express notice of an intention to demand commissions. It is not set forth in the stated case that he did. As to any act or deed on his part, so far as disclosed in the stated case, clearly there was nothing to put the city upon notice. Without such notice, having served his full term, his contract has been executed, and he cannot now be heard to say that the agreement under which he was appointed was illegal and void, and that he is now entitled to a greater compensation than that to which he agreed, served for, accepted and received. In other words, the transaction has been completed, although all the collections have not been paid over. This state of affairs does not arise because of a disputed claim made at any time during the term of service, and it could only be by means of such a claim that the defendant could successfully contend that the contract was not executed. If it were not executed, possibly it would be void, as without legal consideration to support it; and possibly, further, as against public policy. But, if executed, as we think it is, the time for raising these questions has passed.

The city of Pittsburg had the power to make such a contract as is set forth in exhibit No. 2. It has never by any act shown dissent from the agreement made by its chief executive officer, and it is now in court undertaking to enforce it.

In support of the views here expressed are many authorities:

"Where a corporation has entered into a contract, which has been fully executed on one part, and nothing remains but for it to pay the consideration money, it will not be allowed to set up that the contract was ultra vires:" Oil Creek & Allegheny River R. R. Co. v. Pennsylvania Transportation Co., 83 Pa. 160.

"If no question of the constitutional power of a city to do municipal work, such as the opening or grading and

paving of streets, the construction of drains and sewers, the erection of municipal buildings, the introduction of gas and waterworks, arises until years have elapsed after such work is done, it could not be tolerated that because the power is ultimately held to have been in excess of the lawful authority of the city, that such streets must be closed and abandoned, or the sewers and drains destroyed, or the gas and waterworks closed, or the municipal buildings torn down. Such municipal works having been done under color of lawful authority, when no question as to the validity of the authority was raised, must be regarded as lawfully done:" King v. Phila. Co., 154 Pa. 160.

"Where a corporation, although prohibited by its charter, enters into a contract for the purchase of stock in another corporation, and the contract is executed by the delivery of the stock, it cannot set up as a defense to an action on a promissory note given for the price of the stock, and held by a bona fide purchaser, that the contract was ultra vires."

"It may be that as between the original parties the defendants could have rescinded the contract and declined to receive the stock. But they executed it; they accepted the stock and gave their note in payment, for which note the plaintiffs paid value in good faith. The defense of ultra vires by a corporation comes with a better grace if made before it has discovered that it has made a bad bargain:" Wright et al. v. Pipe Line Co. et al., 101 Pa. 204.

" 'A corporation may not avail itself of the defense ultra vires when the contract has been in good faith fully performed by the other party, and it has had the full benefit of the performance and of the contract:' 27 Am. & Eng. Ency. of Law, 363; Morawetz on Corporations, sec. 689; Wright v. Pipe Line Co., 101 Pa. 204; Oil Creek & Allegheny River R. R. Co. v. Transportation Co., 83 Pa. 160:" Boyd v. American Carbon Black Co., 182 Pa. 206.

"No statute has been called to our attention which

made it the duty of the borough officers to let the contract to the lowest responsible bidder, but the ordinance in question contains such provision. Therefore, while it cannot be said that they exceeded their statutory powers or violated any statutory provision, yet it cannot be denied that in entering into the second contract without attempting to get bids, they failed to comply with the mandate of the ordinance. There is also the objection that they were not specially authorized by resolution or ordinance of council to enter into this contract. But the only difference between the first and second contracts that is alleged is as to the price of the materials. Unquestionably the borough had power to make that change, and it is not intimated, either in the affidavit of defense or in appellant's brief, that any abuse of discretion was involved in the transaction, or that it was tainted with fraud, or that it was not justified by the conditions existing at the time. This being so, the principle enunciated in numerous cases is applicable, that a municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, which are within the corporate powers, and that such ratification need not necessarily be by resolution or ordinance, but may be implied from the acceptance of the work and formal assertion in judicial proceeding of a claim founded on it. Amongst these cases may be cited: McKnight v. Pittsburg, 91 Pa. 273; Phila. v. Hays, 93 Pa. 72; Brientnall v. Phila., 103 Pa. 156; Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Shiloh Street, McCormick's App., 165 Pa. 386; Amberson Ave., 179 Pa. 634; Harrisburg v. Shepler, 7 Pa. Superior Ct. 491; Erie v. Bier, 10 Pa. Superior Ct. 381:" Tarentum Boro. v. Moorhead, 26 Pa. Superior Ct. 273.

"If the public corporation has performed the contract on its side, the adversary party cannot retain the benefits and plead ultra vires. The objection that the contract was originally ultra vires has been eliminated by performance:" Page on Contracts, sec. 1054.

To the same effect are City of Buffalo v. Balcom, 134 N. Y. 532; (32 N. E. Repr. 7) Mayor of New York, etc., v. Sonneborn, 113 N. Y. 423 (21 N. E. Repr. 121); Hobbs v. City of Yonkers, 102 N. Y. 13 (5 N. E. Repr. 778); Mayor of Hoboken v. Harrison, 30 N. J. L. 73; Tice v. City of New Brunswick, 64 N. J. L. 399 (45 Atl. Repr. 781); City of St. Louis v. Davidson et al., 102 Mo. 149 (14 S. W. Repr. 825); Middleton v. City of Elkhart, 120 Ind. 166 (22 N. E. Repr. 123); De Boest v. Gambell, 35 Oregon, 368 (58 Pac. Repr. 72).

Among the authorities upon which the defendant relies are three Pennsylvania cases, namely: Hunter v. Nolf, 71 Pa. 282; Lancaster County v. Fulton, 128 Pa. 48; Wilkes-Barre v. Rockafellow, 171 Pa. 177.

Hunter v. Nolf, 71 Pa. 282, was a case in which the plaintiff and defendant being applicants for appointment to a public office, plaintiff agreed to withdraw, defendant agreeing in case of his appointment to divide the receipts, they to share the duties jointly. The plaintiff withdrew, the defendant was appointed, and the plaintiff assisted in performing the duties. Held, that the contract was against public policy, and that the plaintiff could not recover for services rendered.

Such a contract was void ab initio, and at no time could be enforced. Here the agreement of June 20, 1906, contained nothing which the city could not legally have done, and could not afterwards legally approve.

Lancaster County v. Fulton, 128 Pa. 48, was a case in which Fulton, as county solicitor under a salary fixed by law, contracted with the commissioners for greater compensation, the services being within his official duties as solicitor. He could not recover, because his contract was such as the commissioners had no power to make, and therefore was incapable of ratification.

Wilkes-Barre v. Rockafellow, 171 Pa. 177, was a suit by the city against the sureties on the bond of the city treasurer. The commissioners of the sinking fund of the city loaned to the treasurer, who was in business as a

banker, the money in their hands as commissioners, to be used by him in his banking business. He paid interest to himself regularly as city treasurer. Finally his bank closed its doors, and "his indebtedness to the city as treasurer was ascertained to be $51,743.01. It was made up of four items, viz.: the sinking fund of the city, and between four thousand and five thousand dollars of interest thereon; the ordinary or current funds of the city and a considerable sum allowed as interest on the balance due upon this account."

It was held, that the sureties were responsible for their principal as a public officer, and not as a banker or borrower, unless they assented to the action which made the loss possible.

There being some evidence tending to show that the treasurer, when a candidate for election, had agreed to pay interest at the rate of three per cent. on balance in favor of the city, the court said: "This agreement, if made, did not amount to a loan of any particular sum of money by the city council to the treasurer, but was in the nature of a premium demanded from him as the price of the office. It was a premium for which he was not liable, which he could not be compelled to pay if he had taken defense to it, and for which the sureties are not liable. The agreement, if made, was against public policy, and is incapable of enforcement. . . . The promise to pay interest as the price of an election to the office of treasurer has no valid consideration to support it. It is a promise that we cannot recognize as binding on him who made it; a fortiori is it without binding effect on the sureties upon an official bond."

It will thus be seen that the case last referred to is entirely different from the one under consideration. The parties defendant were sureties, whose contract was limited by the terms of their bond; and the principle of estoppel, because of an executed contract, had no application, nor was it even mentioned.

The remaining authorities cited by counsel for de-

fendant, in support of his contention, are from other states. We do not regard them as applicable in the sense that they meet the facts here presented for consideration and decision.

Upon the case stated we are of opinion that the city of Pittsburg is entitled to judgment against the defendant for the sum claimed, with interest and costs.

### ORDER.

And now, to wit, July 6, 1910, it is ordered that, upon the facts as presented in the case stated, in which the city of Pittsburg is plaintiff, and Lawrence R. Goshorn is defendant, judgment be entered in favor of the city of Pittsburg, and against Lawrence R. Goshorn for the sum of $31,649.06, being $30,476.44, with interest thereon from November 17, 1909 to date. It is further ordered that the defendant pay the costs of this proceeding.

*Error assigned* was in entering judgment for plaintiff on the case stated.

*John P. Hunter,* with him *Walter Lyon,* for appellant.— The memorandum is unilateral, is without consideration, is uncertain and void, and incapable of enforcement: Serrill v. Wilder, 77 Ohio, 343 (83 N. E. Repr. 486).

The contract is a bargain as respects a public office of trust, and undertakes to negative the legal act of the duly constituted authority in determining the amount of compensation proper to be paid to a public officer, and the manner in which such compensation shall be earned, and is therefore against public policy and void: Wilkes-Barre v. Rockafellow, 171 Pa. 177; Hunter v. Nolf, 71 Pa. 282; Lancaster County v. Fulton, 128 Pa. 48; Woolsey v. Durkin, 7 Luz. Leg. Reg. 97; Fitzsimmons v. Brooklyn, 102 N. Y. 536 (7 N. E. Repr. 787); People ex rel. Satterlee v. Board of Police, 75 N. Y. 38; Hawkeye Ins. Co. v. Brainard, 72 Ia. 130 (33 N. W. Repr. 603); Peters v. City of Davenport, 104 Iowa, 625 (74 N. W. Repr. 6); Gilman v. Railroad Co., 40 Ia. 200; Abbott v.

Hayes County, 78 Neb. 729 (111 N. W. Repr. 780); City of Butte v. Cohen, 9 Mont. 435 (24 Pac. Repr. 206); Bloomington City v. Calhoun, 86 Ill. App. 491; Brown v. First Nat. Bank of Columbus, 137 Ind. 655 (37 N. E. Repr. 158); Cobb v. Scoggin, 85 Ark. 106 (107 S. W. Repr. 188); Miller v. United States, 103 Fed. Repr. 413; Meguire v. Corwine, 101 U. S. 108; Bliss v. Lawrence, 58 N. Y. 442; Grant v. City of Rochester, 79 App. Div. (N. Y.) 460; Farrell v. City of Buffalo, 118 App. Div. (N. Y.) 601 (103 N. Y. Supp. 340).

*Charles A. O'Brien,* for appellee.—It is well established that where a contract is fully performed on one side, the other party to the contract, who has received the benefit thereunder, is estopped from denying its validity: Oil Creek, etc., R. R. Co. v. Transportation Co., 83 Pa. 160; Boyd v. American Carbon Black Co., 182 Pa. 206; Corbet v. Fuel Supply Co., 21 Pa. Superior Ct. 80; Beaver Boro. v. Davidson, 9 Pa. Superior Ct. 159; City of Buffalo v. Balcom, 134 N. Y. 532 (32 N. E. Repr. 7); Mayor of N. Y. v. Sonneborn, 113 N. Y. 423 (21 N. E. Repr. 121); Mayor, etc., of Hoboken v. Harrison, 30 N. J. L. 73; City of St. Louis v. Davidson, 102 Mo. 149 (14 S. W. Repr. 825); Middleton v. Elkhart City, 120 Ind. 166 (22 N. E. Repr. 123).

Although the precise question in this case does not seem to have been passed upon in this state, it has been decided in other jurisdictions adversely to the contention of the appellant: Hobbs v. City of Yonkers, 102 N. Y. 13 (5 N. E. Repr. 778); DeBoest v. Gambell, 35 Oregon, 368 (58 Pac. Repr. 72, 353); Tice v. New Brunswick, 64 N. J. L. 379 (45 Atl. Repr. 781); Emmitt v. New York, 128 N. Y. 117 (28 N. E. Repr. 19); Love v. Jersey City, 40 N. J. L. 456; McInery v. Galveston, 58 Tex. 334; Rau v. Little Rock City, 34 Ark. 303.

The agreement must, under the circumstances of this case, be construed as having been ratified: Sandy Lake Boro. v. Gas Co., 16 Pa. Superior Ct. 234.

Opinion by Mr. Justice Stewart, January 3, 1911:

It is a mistake to suppose that the only or chief infirmity to be considered in the contract which the city of Pittsburg is here seeking to enforce, arises from the fact that the mayor in entering into it exceeded his power. If this were all, the authorities cited by the learned trial judge in his opinion filed in the case, would give large support to his conclusion. But it is far from being all. The defense relied on is not only that the contract was an attempt on the part of the mayor to do something for which he had no authority, but that it was a clear usurpation of a power which by law was committed to another department of city government, and which by that department had been duly exercised. The position taken is that the contract is repugnant to the policy of the law. The law intrusted exclusively to the councils of the city the power to fix the compensation of the collector, and this they had done by ordinance duly adopted. It is to be presumed that in fixing this compensation, they had regard to the work to be performed, and what compensation was necessary to command the services of one qualified to discharge the duties of the office. When the mayor came to exercise his power of appointment, because he thought the compensation fixed by the council excessive, he required of the person he proposed to appoint—making it a condition of his appointment—that he enter into a written contract binding himself to accept for his services a fixed sum, instead of a per centum on the collections as allowed by the ordinance, thereby reducing his compensation very much below that which he otherwise would be entitled to. The mayor was thus substituting his views, in a very practical way, for the deliberate action of the only body that had any right to determine the question of compensation. No matter how meritorious his motives, he was setting at defiance the law governing the case, annulling arbitrarily the action of councils, and taking to himself as mayor a power which had not only not been conferred on his office, but which was expressly

and exclusively lodged in another department. The terms he exacted excluded from possible appointment the entire class of men willing to accept the office at the compensation fixed by law, but who would accept for nothing less. His act was an undue interference with the proper exercise of governmental functions, and for this reason, if for no other, it contravened the settled policy of law. But the case presents another condemnatory feature which must not be overlooked. We have a public policy so clearly indicated in our state constitution that it admits of no dispute. By constitutional provision every public officer before entering upon the discharge of the duties of his office, is required to make oath that he has not paid, or contributed, or promised to pay or contribute, either directly or indirectly, any money or other valuable thing, to procure his nomination, election or appointment. The condition of the appellant's appointment to the office of collector was that he would promise "to pay over to the City Treasurer the amount of the commissions allowed by the ordinance, less his compensation as above fixed and the expenses of his office," etc. This promise having been made, his appointment followed. The promise was the price of his appointment. If it should be supposed disputable by any, whether this contract offends against public policy for the first reason given, what answer can be made to this? The policy here asserted is written in the fundamental law of the state. But reasoning further on general principles is made unnecessary by our own express adjudications. We need only refer to the case of Wilkes-Barre v. Rockafellow, 171 Pa. 177. The contract there set up was that the treasurer to secure his appointment had promised to pay to the city interest on his balances. "This agreement," says Mr. Justice WILLIAMS in the opinion, "if made, did not amount to a loan of any particular sum of money by the city council to the Treasurer, but was in the nature of a premium demanded from him as the price of the office. It was a premium for which he was not

liable, which he could not be compelled to pay if he had taken defense to it, and for which the sureties are not liable. The agreement if made was against public policy and is incapable of enforcement." This decision is in full accord with the doctrine which prevails generally. If then this contract offends against public policy, as it unquestionably does, the legal results which follow are far more serious than those which attach to a contract simply ultra vires. The latter is illegal only in the sense that it lacks authority for the making; the infirmity is remediable; it may be cured by subsequent ratification, and is even enforcible against a party who has received the benefits under it and afterwards seeks to repudiate it. What results to a contract against public policy is a total and irremediable paralysis, which leaves it absolutely without any force or effect whatever, so that it cannot, under any circumstances, be made the basis of a cause of action. The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them. If they have fully executed their unlawful contract, the law will not disturb them in the possession of what each has acquired under it. If one has executed in whole or in part, the law turns a deaf ear when he pleads for its aid to compel the other to do as much. In the latter case the maxim in pari delicto melior est conditio possidentis applies. The "conditio" referred to in the maxim, as explained by Mr. Pomeroy, in his work on equity jurisprudence, is clearly the condition of the parties with respect to their property rights created by or resulting from the contract. If the contract is still executory, the promisor is left undisturbed in the possession of the money or other property which he agreed to pay or transfer; if the contract has been executed, the promisee is left undisturbed in the possession of the money or other property which has been paid or conveyed to him. Now the result must be the same whether the contract here sought to be enforced be regarded as executed or executory. If the former, the law

leaves the parties in possession of what has been acquired under it; if executory, it refuses to enforce it. In either case the city is remediless. It is clear however that it remains executory; the appellant though he has had the benefit of the office has not paid the price he agreed to pay; he has not paid to the city treasurer the difference between the salary he agreed to accept and the compensation he was entitled to under the law. A contract can be said to be executed only when the object of the contract has been performed. Here the only object of the contract remains unfulfilled, the appellant retains the money, and the only purpose of the contract is defeated. For the reasons above stated the assignments of error are sustained, the judgment is reversed, and judgment is now entered on the case stated for the defendant.

MESTREZAT and POTTER, JJ., dissenting:

We would affirm this judgment on the opinion of the learned court below.