Employers' Liability Assurance Corp., Ltd., *v.*
Fischer & Porter Company, Appellant.

Argued March 28, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Charles J. Biddle,* with him *Albert M. Hoyt, Jr.,* and *Drinker, Biddle & Reath,* for appellant.

*Webster S. Achey,* for appellee.

OPINION BY HIRT, J., August 7, 1950:

Defendant corporation is an extensive manufacturer of scientific instruments in Philadelphia. Since 1937 it has been insured by the plaintiff company by separate policies in two types of liability contracts. In one of them the plaintiff, as workmen's compensation insurance carrier for the defendant, assumed the conventional risks incident to that relationship. The other was public liability insurance on a form known as a Manufacturer's and Contractor's Liability Policy. This pol-

icy insured the defendant against liability for damages
from injury suffered by others than employes, result-
ing from the operation of defendant's business. The
policies were written on an annual basis and all of
them were negotiated with the defendant, as to premium
charges and other terms, by Harold Glover, on behalf
of the plaintiff insurance company. On delivery of each
policy the defendant made a deposit to apply on the
current premium. The premiums on the policies were
at specified rates based on defendant's annual pay-
roll and the actual total premium due from the de-
fendant on either policy could be determined only from
a payroll audit at the end of the insurance year.

In this action the plaintiff insurer sought to collect
a balance of $1,799.13, alleged to be owing it from the
defendant on the combined premiums applicable to the
two policies for the year May 1, 1945 to April 30, 1946.
The premium on the Workmen's Compensation policy
was at a fixed rate established by law. It is agreed
that a computation, based upon an audit at the ter-
mination of that policy, indicated that the initial pre-
mium deposit made by defendant had overpaid the re-
quired premium for the year by $534 and that defend-
ant was entitled to a credit in that amount. The dis-
pute relates to the premium charges on the Manu-
facturer's and Contractor's Liability Policy. This pol-
icy was issued at a premium rate of .277 cents per
$100 of payroll for manufacturing coverage and on
the same basis at .272 cents for other phases of the in-
surance. Computed at these rates on the payroll audit
at the end of the insurance year as of April 30, 1946,
the balance of premium then due, after deducting the
advance deposit, amounted to $2,333.13. The jury in
this case concluded that defendant was liable in that
amount and, deducting the credit of $534, admittedly
due defendant as a refund on the Workmen's Com-
pensation policy, found for the plaintiff in the sum

of $1,799.13, the full amount of its claim, with interest. Defendant had filed a counterclaim against the plaintiff to recover $4,095.14, alleged to have been illegally collected from it in premiums on the two public liability policies issued by plaintiff in 1944 and 1945. On this issue, the jury found in favor of the plaintiff. The court entered judgments on both verdicts. Defendant has appealed from the refusal of the court to enter judgment in its favor, notwithstanding the verdict for plaintiff in the sum of $1,799.13 with interest. And in the same appeal argues for a reversal of the judgment refusing a new trial on defendant's counterclaim.

It is defendant's contention that the public liability policy entered into with plaintiff insurer, was an illegal contract because of excessive premiums exacted, and that plaintiff therefore cannot recover for the breach of it. It is settled beyond question that the law will not aid one to recover on a contract expressly prohibited by law. *Landy v. Phila. Life Ins. Co.*, 78 Pa. Superior Ct. 47. A party to an illegal bargain cannot recover damages for the breach thereof (Restatement, Contracts, §598) and a bargain is illegal if either the formation or performance of it are prohibited by statute. ibid. §580; 17 C.J.S., Contracts, §272. Courts will not lend their aid to the enforcement of unlawful contracts "founded upon transactions in violation of a public policy declared by the legislature": *F. F. Bollinger Co. v. Widmann B. Corp.*, 339 Pa. 289, 14 A. 2d 81. The principle has application to "an illegal contract, especially one made in violation of a penal statute": *Hazle Drug Co., Inc. v. Wilner et al.*, 284 Pa. 361, 131 A. 286. Appellant argues that the Manufacturer's and Contractor's Liability Policy here in suit was illegal in that it violated two distinct provisions of The Insurance Company Law. We agree that the court erred in refusing to find as a matter of law under the present record that the insurance contract was illegal because

in violation of at least one of the express statutory prohibitions of the Act.

In 1943 and in prior years the premium rate on the Manufacturer's and Contractor's Liability contract with the plaintiff company were 1.7 cents for each $100 of payroll, for general manufacturing and 1.2 cents per $100 for clerical and sales staff coverage. *It is an admitted fact of importance that plaintiff insurer was never called upon to pay a single loss on any of the public liability policies entered into with defendant in this or in prior years.* The plaintiff nevertheless in the 1944-1945 policy increased the premium rates to 17.7 and 17.2 cents per $100 for the coverages and in the policy here in suit, again raised the rates to 27.7 and 27.2 cents or, within the period of two years increased its rates to approximately 10 and 16 times the amount of the premiums in 1943 and previous years for identical coverage.

Appellant's principal contention is that plaintiff's own testimony establishes that the rates of the Manufacturer's and Contractor's Liability policy were increased by plaintiff company, on the annual renewal of this insurance on May 1, 1944 and again on May 1, 1945, to compensate it, the insurer, for an excessively high loss experience on the Workmen's Compensation risk. Section 654 of The Insurance Company Law as amended by the Act of July 31, 1941, P.L. 607, 40 PS §814, provides for the classification of risks and premium rates for the insurance of employes under the Workmen's Compensation Acts, by a rating bureau subject to the supervision of the Insurance Commissioner. As to Workmen's Compensation insurance the defendant had been classified and had been given a premium rate of 25 cents per $100 of payroll. This then became the approved premium rate applicable to defendant's Workmen's Compensation insurance and was the rate charged by plaintiff in all of the Workmen's Com-

pensation policies. Under §654 it was unlawful for any insurer to issue any policy of Workmen's Compensation insurance "except in accordance with the classifications, underwriting rules, premium rates, and schedules or merit rating, proposed by the rating bureau aforesaid for the risk insured and as modified, amended or approved by the Insurance Commissioner for such insurer". Section 652 of the amendment of May 24, 1933, P. L. 983, 40 PS §812, provides: "No suit shall be maintained for the collection of premiums upon any policy of insurance under 'The Workmen's Compensation Act of nineteen hundred and fifteen,' or acts amendatory thereof, which violates any of the provisions of this act."

Basic error in this case stems from the fact that the lower court submitted the question of Harold Glover's agency to the jury, whereas it is established in this record by the plaintiff's proofs that he was its agent in negotiating the policy in question with the defendant; the court should have so ruled as a matter of law. The pleadings read into the record admit that Harold Glover "acted as agent for the plaintiff in negotiating" the policy in question and there is competent evidence, in Glover's testimony, that he was plaintiff's agent in negotiating all of the policies with defendant over a period of years, including the one in question. Plaintiff did not contend that Glover lacked authority to act in its behalf, nor could it, since it issued the policy on terms negotiated by Glover. Cf. *Slater v. General Cas. Co. of America,* 344 Pa. 410, 25 A. 2d 697. And since plaintiff approved the contract, as negotiated by Glover, it is bound by statements made by him by which the contract was procured. *Ohlbaum v. Mayer et ux.,* 285 Pa. 260, 131 A. 858. It has always been the law that even "when an agent exceeds his authority, his principal cannot avail himself of the benefit of his act and at the same time repudiate his

authority": *McNeile v. Cridland et al.*, 168 Pa. 16, 31 A. 939. Restatement, Agency, §96, in Comment a, is to the same effect. There was no attempt by plaintiff to repudiate Glover's authority in this case and his testimony frankly admits facts which taint the contract with illegality.

There had been serious injuries of workmen in defendant's plant involving large payments of workmen's compensation by the defendant. In that connection Harold Glover testified: "Q. Well, there actually had been losses on the compensation? A. Yes, it was the compensation that was the headache. It wasn't the public liability. It [the increase in rates on the Public Liability policy] was done so that the losses on both would be a reasonable outcome. That is what I have been trying to tell you. We had no trouble with the public liability, we grant that. Q. But you had had a bad experience with the compensation? A. I said that, yes sir, that is right. Q. And then the additional rate on the liability was fixed, according to you, to make up for the losses which had occurred on the compensation. A. I wouldn't say to make up. I would say so we wouldn't get stuck for another year. No rates were retroactive. That was done. There was no retroactive rate in it. . . . Q. Well, Mr. Glover, you said yesterday that, as I recall it, the reason this—in the first place, you said yesterday that looking at Fischer & Porter simply from a public liability point of view there was nothing to justify any rate above the usual rate? A. I say that now too. Q. . . and that the reason why this higher rate was charged was to take care of compensation losses? A. Yes sir. Q. That is right? A. Yes sir. Q. *Mr. Glover the fact still remains that the rate on the liability insurance was boosted in order to cover the compensation loss, no question about that? A. I admitted that freely from the beginning.*"

Plaintiff was prohibited by law from charging the defendant a premium for Workmen's Compensation insurance in excess of the approved rate established by the bureau. Plaintiff's action in this case, under the guise of collecting an increased premium on the Public Liability policy, in reality is a suit to recover premiums above the lawfully established rate on the Workmen's Compensation policy. The law cannot thus be circumvented by doing indirectly what could not be done directly. In this respect the insurance policy sued on by plaintiff was an illegal contract and plaintiff was not entitled to recover on its claim.

When plaintiff wrote the yearly policies in 1944 and 1945 the rates for public liability insurance were not subject to control by law as to amount, except that "Discrimination between individuals of the same class in the amount of premiums or rates charged for any policy of . . . casualty insurance" was prohibited by the Act of June 23, 1931, P. L. 904, which, by amendment, added a new section, 353, to The Insurance Company Law. Violation of this provision was made a misdemeanor.

There is an admission in the pleadings, which was read into the record in this case that: "The annual premium rate generally charged during the years 1944, 1945 and 1946 by insurance companies for Manufacturer's and Contractor's Liability insurance of the type concerned in this action for firms engaged in the instrument manufacturing business was approximately .017 per $100 remuneration, and for clerical and sales staff coverage .012 per $100 remuneration." These also were the "Manual Rates" applicable generally, as determined by the National Bureau of Casualty and Surety Underwriters. And Harold Glover, the plaintiff's sole witness, admitted: "that the regular ordinary rate charged in 1943, 1944 and 1945 was .017". The admis-

sion of the pleadings coupled with Glover's testimony, that the increased rate on the policy in question were above the usual rates charged instrument manufacturers generally for like insurance to compensate plaintiff for anticipated losses on the Workmen's Compensation policy, were evidence of discrimination between manufacturers of the same class in the amount of premiums charged for this type of public liability insurance. We need not decide, however, whether the record establishes the illegality of the contract as a matter of law on that ground since, as above indicated, there was a patent violation of The Insurance Company Law as to Workmen's Compensation contracts.

The allegations of the defendant in its pleading under new matter are the basis of a counterclaim and not of set-off. The counterclaim is a separate action in which the insured, in reality is the plaintiff and the insurer, the defendant. The judgment for the plaintiff in the action on the counterclaim was independent of plaintiff's judgment for unpaid premiums. There were two judgments and but one appeal. Under the practice in this Court separate appeals were indicated. *Rinker v. Colonial Iron Co.*, 68 Pa. Superior Ct. 258. Cf. *Geiger et al. v. Garrett*, 270 Pa. 192, 113 A. 195; *Bryan et ux. v. Barber Asphalt Co.*, 289 Pa. 123, 137 A. 169. We have interpreted defendant's argument as the equivalent of an election to direct his appeal to the refusal of the court to enter judgment in its favor n.o.v. on the money judgment in plaintiff's favor. There is no appeal before us from the refusal of the court to grant a new trial on the defendant's counterclaim. Defendant in our view of the merits of its counterclaim in reality is not prejudiced by this conclusion for it is idle for it to say that it submitted to an increase of 16 times the normal premium on the Public Liability policy, with a no-loss experience, without knowledge that it was an illegal contract. Under such circumstances, the law will leave

the parties in the condition in which it finds them. *Pittsburg v. Goshorn*, 230 Pa. 212, 79 A. 505.

Plaintiff is admittedly indebted to the defendant in the sum of $534 in premiums overpaid by defendant on the Workmen's Compensation policy. This was an admission in the pleadings read into the record. Defendant's right to recover this amount is not related to the illegal contract on which plaintiff sued. Cf. 17 C. J. S., Contracts, §276; *First Nat. Bk. Greencastle v. Baer*, 277 Pa. 184, 120 A. 815.

Accordingly, the money judgment in favor of plaintiff on its claim against the defendant is reversed and judgment is entered in favor of defendant in that action and against the plaintiff in the sum of $534 with interest from April 30, 1946.