## Kimball v. Cambria County

*Lawrence L. Davis, Davis & Davis,* and *William D. Shettig,* for plaintiffs.

*Robert S. Glass,* for defendant.

PER CURIAM, March 10, 1965.—Plaintiffs, L. Robert Kimball, a registered engineer, and G. C. Hoppel, Jr., a registered architect, (they shall be referred to as "engineer" and "architect," respectively) entered into a contract with the County of Cambria, defendant, (referred to as "county") to furnish professional services in the construction of the Cambria County Juvenile Detention Home. Contract was executed on December 14, 1962, and, at this date, engineer was employed as county engineer and was serving as county surveyor. In the latter position, he was not called upon, or required, to perform any duties, and it was not a salaried office.

Pursuant to the contract, services were performed and computed under the contract rate at $12,683.68. In addition, architect claims reimbursable expenses under the contract provisions of $374.61. Said services, etc.,

performed to date, represented approximately 80 percent of the contract performance. On refusal of the Cambria County Commissioners to authorize payment, this suit was instituted.

County filed preliminary objections to the complaint:

1. Asking for a more specific complaint. (This was abandoned at the argument.)

2. In the nature of a demurrer for the reason engineer, an elected official, i.e. surveyor of the county, was prohibited, and as county engineer, disqualified, from contracting with county.

The objections were argued before the court en banc and briefs submitted.

There is no doubt at the time engineer entered into the contract he was an elected county official: The County Code, 16 PS §401; Constitution of 1874, art. XIV, §1. The office of surveyor, while no doubt important at one time, has in late years not required the performance of any duties, at least in this county. His function, if any, certainly was not concerned with the construction of the Juvenile Detention Home, nor has surveyor a voice in the letting of or vote on the contracts of the county.

Section 1806 of The County Code of August 9, 1955, P. L. 323, 16 PS §1806, provides as follows:

"No elected or appointed county officer shall be in any wise, either directly or indirectly, personally interested in any contract to which the county is a party, or in the construction of any public work or improvement made or undertaken under the authority of the county commissioners, or receive any reward or gratuity from any person so interested. No such officer shall purchase directly or indirectly any property sold at a tax or municipal claim sale.

"Any person violating the provisions of this section shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to pay a fine not exceeding five hun-

dred dollars ($500), and may, by decree of the court, be removed from office."

While the act makes no distinction between those officers which do, or do not, pass upon and vote on contracts with the county, this being the sole responsibility of the commissioners, we are satisfied it does prohibit all county officers from being interested in any contract with the county. This is merely a restatement of the common-law principle that such contracts are against public policy.

"In determining whether or not a contract is against public policy, the test depends upon its purpose and tendency, and not upon the fact that no harm results from it": Sum. Pa. Jur. Contracts, §296.1, citing Kuhn v. Buhl, 251 Pa. 348, 96 Atl. 977, Ann. Cas. 1917D 415.

The court cannot enforce payment by the county under a contract forbidden by statute. This decision rests on the rule generally followed in Pennsylvania and in the Federal courts, that "every contract made for or about any matter or thing which is prohibited and made unlawful by any statute is void, though the statute itself may not expressly so provide, but only inflicts a penalty on the offender, because a penalty implies a prohibition though there are no prohibitory words in the statute": 55 A. L. R. 2d 496 §4; Central R. Co. of New Jersey v. United States Pipe Line Co., 1 F. 2d 866 (1924, C.A. 3d, Pa.) ; Snaman v. Maginn, 77 Pa. Superior Ct. 287 (1921) ; Employers' Liability Assurance Corp., Ltd., v. Fischer & Porter Company, 167 Pa. Superior Ct. 448, 75 A. 2d 8 (1950) ; Dippel et al. v. Brunozzi, 365 Pa. 264, 74 A. 2d 112 (1950).

Therefore, we must hold that Kimball, as a county officer, i.e., as surveyor, at the time of entry into the contract, was prohibited from contracting with the county. As surveyor he is a county officer: 16 PS §1001, as amended.

As the contract is executed by both architect and engineer, plaintiffs, we look towards the payment of consideration and find that there is one lump consideration for the performance of the services called for under the contract.

Where there is one lump consideration for the performance of both legal and illegal acts so that the contract will be deemed to be an entire contract, the general rule is that the illegality of a portion of the consideration will so permeate the entire transaction that the contract will be wholly unenforceable. This is so in view of the fact that the refusal to enforce or recognize the illegal aspect of the contract will defeat the primary purpose of the parties, and the courts will not alter or amend the contract contrary to the clear intention of the parties: Sum. Pa. Jur. Contracts, §275; Filson's Trustees v. Himes, 5 Pa. 452, 47 Am. Dec. 422. Therefore, the contract as to architect as well as to engineer is unenforceable.

A second question is raised. Can the county, if it recognizes a moral obligation to pay, having received the benefits, although it has no legal obligation, compensate plaintiffs for their services rendered?

15 McQuillin Municipal Corporations (3rd ed.) 64, §39.24n, states: "Moral obligations, although not legal obligations, may be compensated: Justice v. Philadelphia, 37 Pa. Super. Ct. 267, following Bailey v. Philadelphia, 167 Pa. 569, 31 Atl. 925."

An obligation may be paid by a municipality where it would be legally enforceable, except for a rule exempting the municipality in the particular instance from legal liability, or where it is legally unenforceable but is binding upon the municipality in conscience and natural justice: State ex rel. v. Anderson, 159 Ohio 159, 111 N. E. 2d 248 (1953).

In State ex rel. Tejan v. Milby, 119 N. E. 2d 97 (Ohio App., 1953), the court held that the claims for work per-

formed and materials furnished to a township were barred by the General Code but that a resolution by the township board that "The claim is a just claim and that the township has received full benefit of the transaction and that we authorize the claim to be paid," was a sufficient recognition of a moral obligation as to require the township clerk, the defendant, to sign the necessary voucher for payment.

Does a governmental agency, any more than a private individual, that has appropriated the benefits of services, not have a moral obligation to compensate plaintiffs for services rendered and benefits received? : Luzerne Township v. Fayette County, 330 Pa. 247, 199 Atl. 327.

As pointed out at argument, here we have a situation where there is admittedly no evil design or bad faith, no failure to properly perform the services as requested, where services, in fact, were skillfully performed, no improper conduct nor impugning of motives of plaintiffs, where commissioners alone awarded the contract and no inducement for award or participation in voting by plaintiffs took place, where county solicitor at time of contract execution passed favorably on its legality and plaintiffs accordingly entered into its execution, where engineer had been assured by two prior county solicitors that he could accept county contract. Should plaintiffs, where such a situation would exist, be denied compensation for those benefits already received by the county and the benefits are not disputed?

Certainly, there would appear grounds for claiming the existence of a moral obligation on the part of county to compensate plaintiffs and where the above situation as outlined would exist, this moral obligation would be recognized by this court: Harbold v. Reading, 355 Pa. 253, 49 A. 2d 817 (1946).

A moral obligation is one which cannot be enforced by action but which is binding on the party who incurs

it, in conscience and according to natural justice, or a duty which would be enforceable by law, were it not for some positive rule, which, with a view to general benefit, exempts the party in that particular instance from legal liability: Harbold case, supra.

Where plaintiffs perform the work authorized by the commissioners and it is accepted by the county, and where the commissioners recognize the moral obligation of the county to compensate plaintiffs for their services, plaintiffs would be entitled to receive compensation agreed to by the commissioners, and county controller would be authorized to issue a warrant therefor. In other words, if a county, acting through its commissioners, sees fit to recognize the fact that services were performed by plaintiffs and that they were valuable, and, therefore, ought to be paid for, even though there was no obligation constraining such payment, the court would not interfere to prevent such payment: Walthour v. McDowell, 109 Pa. Superior Ct. 118, 165 Atl. 746 (1933).

However, if there were evil design or bad faith or improper conduct impugning the motives of plaintiffs, the courts would then most certainly interfere with such payment. But, as pointed out by counsel for county at argument, these conditions do not exist.

Therefore, on this basis, though this court cannot order enforcement of the contract, neither will it interfere to prevent such payment if the same is now properly authorized by the commissioners.

Since engineer is no longer county surveyor, this question would not be in issue as to the completion of the work to be done on the project involved in the contract which we have held to be prohibited because he was a county officer; for, as county engineer, he is not a county officer: Commonwealth ex rel. Foreman v. Hampson, 393 Pa. 467, 143 A. 2d 369. Nor does county so contend.

It is unnecessary to pass upon the question of whether his position as county engineer disqualified him from entering into the contract for services in question. Suffice it to say, plaintiffs have averred in their complaint, paragraph 5: "The engineering services as rendered under this agreement were not within the ordinary scope of services rendered to the county under the retainer agreement" entered into with plaintiff Kimball. If the services performed did not lie within the sphere of his official duties as prescribed by statute, then there would be no hindrance to plaintiffs being compensated, if compensation is now properly authorized by the commissioners.

### ORDER

Now, March 10, 1965, after argument and upon consideration of the pleadings and briefs, it is hereby ordered:

1. The preliminary objections filed by County of Cambria, defendant, are sustained, and the complaint dismissed.