## Maher v. Miller

W. *Thomas Laffey, Jr.,* for plaintiff.
*William R. Tighe,* for defendant.
*Robert S. Grigsby,* for additional defendants.

WETTICK, *J.*, December 10, 1980—This is a legal malpractice action which plaintiff has brought against her former counsel, Sheldon Miller (Miller), for his alleged failure to properly represent her in a damage claim arising out of a March 21, 1974 automobile accident. Plaintiff retained Miller shortly after the accident and discharged him in the fall of 1977 at which time she retained Nernberg and Nernberg (Nernberg) to act as her counsel in this matter. The gravamen of plaintiff's complaint is that Miller allegedly failed to pursue timely a claim against a New York corporation which was jointly liable to plaintiff. The complaint alleges that plaintiff's claim, if properly handled, was worth in excess of $150,000 but that Nernberg was forced to settle the claim for $50,000 because of Miller's failure to pursue her claim against this corporation. Plaintiff is represented in this legal malpractice action by Nernberg.

Miller, through a third party complaint, has joined as additional defendants the Nernberg law firm and individual attorneys in this law firm on the grounds that they are solely, jointly and/or severally liable to plaintiff. In his complaint, Miller alleges that the New York corporation was in fact before this court and that Nernberg's negligent failure to pursue a claim against this corporation caused plaintiff's losses. In defending this third party claim, Nernberg is represented by a separate law firm that was presumably retained by Nernberg's insurance carrier.

Presently before this court are Miller's motion to disqualify Nernberg from representing plaintiff in this action and Nernberg's petition to sever Miller's action against Nernberg from the action of plaintiff against Miller. The bases of Miller's motion to disqualify are that Nernberg's interests in this litiga-

tion as a third party defendant conflict with plaintiff's interests and that members of the Nernberg law firm will be material witnesses in the trial of this action. The basis of the petition to sever is that separate proceedings will render invalid any claim of conflict of interest, thus permitting Nernberg to continue representing plaintiff. Because the only reason for the petition to sever is that severance will allegedly eliminate any obstacles to Nernberg's representation of plaintiff, we will consider together the motion to disqualify counsel and the petition for severance of the additional defendants' claim.[1]

## I.

Disciplinary Rule 5-101(A) covers the issue of the disqualification of an attorney on the ground that his or her personal interests may impair the exercise of his or her professional judgment on behalf of the client. This rule provides: "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

In the present case, the exercise of Nernberg's professional judgment on behalf of plaintiff may reasonably be affected by his own financial, business, property, or personal interests. Obviously, it

---

1. Nernberg's contention that defendant's motion to disqualify should be denied because it was untimely filed is without merit. A court's duty to ensure that attorneys act within the Code of Professional Responsibility cannot be defeated by the laches of the party seeking disqualification, at least where the motion to disqualify is made prior to the commencement of the trial: American Dredging Company v. City of Philadelphia, 480 Pa. 177, 389 A. 2d 568 (1978).

makes no difference to plaintiff whether reimbursement for her losses is provided by Miller because of his failure to bring a party before the court and/or by Nernberg because it negligently settled the suit instead of pursuing a valid claim against this party. Nernberg, on the other hand, has a personal interest in establishing that it protected plaintiff's interests.[2] See, generally, Pittsburgh and New England Trucking Company v. Reserve Insurance Company, 7 D. & C. 3d 576, 127 Pitts.L.J. 124 (1978).

Nernberg contends that there is no conflict in the present case because plaintiff on June 6, 1979 executed a general release which released Nernberg from any claim for malpractice and damages arising out of its representation of plaintiff in the prior litigation. If the release is valid, plaintiff may recover in this action only to the extent that Miller is ultimately liable so there is no potential conflict of interest between plaintiff and Nernberg and therefore no basis for disqualifying Nernberg from representing plaintiff. See Gold & Company, Inc. v. Northeast Theater Corp., 5 D. & C. 3d 442, 126 Pitts.L.J. 163 (1977). For two reasons, however, this release is unenforceable.

First, the release violated D.R. 6-102 which provides that: "A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice."

Also see Ethical Consideration 6-6 which provides that: "A lawyer should not seek, by contract or other means, to limit his individual liability to his

---

2. The record does not indicate whether professional malpractice insurance will cover the full amount of any recovery against Nernberg. But even if Nernberg is fully insured, he would still have an interest in defeating Miller's claim because a judgment against the firm may increase future malpractice

client for his malpractice. A lawyer who handles the affairs of his client properly has no need to attempt to limit his liability for his professional activities and one who does not handle the affairs of his client properly should not be permitted to do so."

The law is settled that the courts of this Commonwealth will not enforce agreements that are contrary to law: Tyler v. Jefferson County-DuBois Area Vocational Technical School, 20 Pa. Commonwealth Ct. 132, 341 A. 2d 235 (1975); Peyton v. Margiotti, 398 Pa. 86, 156 A. 2d 865 (1959); Employers' Liability Assurance Corp., Ltd. v. Fischer & Porter Company, 167 Pa. Superior Ct. 448, 75 A. 2d 8 (1950). And since the Code of Professional Responsibility has the force of law (Slater v. Rimar, Inc., 462 Pa. 138, 338 A. 2d 584 (1979); Com. v. Eastern Dawn Mobile Home Park, Inc., 486 Pa. 326, 405 A. 2d 1232 (1979)), this release which violates D.R. 6-102 is unenforceable.

Second, as a matter of public policy the courts of this Commonwealth will not enforce agreements releasing from liability for negligence persons performing quasi-public functions such as bankers (Thomas v. First National Bank of Scranton, 376 Pa. 181, 101 A. 2d 910 (1954)), bailees (Atkins v. Racquet Garage Corporation, 177 Pa. Superior Ct. 94, 110 A. 2d 767 (1955)), and common carriers (Turek v. Pennsylvania Railroad Company, 361 Pa. 512, 64 A. 2d 779 (1959)). The state imposes upon attorneys as officers of the court at least as great a responsibility to serve the public interest as is imposed on bankers, bailees and common carriers. See Peyton v. Margiotti, supra. Consequently, at-

---

insurance rates and because members of the firm may believe that a malpractice judgment against the firm would injure the firm's reputation.

torneys as a matter of public policy must be subject to the same standard of care.

Nernberg also contends that the severance of Miller's action against Nernberg from the action of plaintiff against Miller will eliminate any potential conflict. We disagree for two reasons. First, it is the responsibility of Nernberg as plaintiff's counsel to determine whether plaintiff's case is best served by supporting or opposing the third party defendant's petition for severance and because of the potential conflict, the exercise of Nernberg's professional judgment on behalf of plaintiff in this matter could be affected by its personal interests. Second, even if the actions are severed, it would be inconsistent with Nernberg's personal interests to seek any recovery that may serve as a basis for a subsequent claim by Miller for joint liability based upon a finding that Nernberg and Miller were both negligent in failing to pursue plaintiff's claim against the New York corporation.

Our finding that Nernberg's exercise of its professional judgment on plaintiff's behalf may be affected by its personal interests does not automatically preclude Nernberg from representing plaintiff. D.R. 5-101(A) permits an attorney whose professional judgment on behalf of a client may be affected by personal interests to accept employment "with the consent of his client after full disclosure. . . ." Thus Nernberg may continue to represent plaintiff if this court finds that plaintiff is fully aware of Miller's claims against Nernberg and has knowingly and understandingly consented to Nernberg's continued representation. A hearing will be scheduled before this court to take testimony on this issue. At the hearing, the burden of proof will be on plaintiff because Nernberg's conflict of

interest is so apparent. It is questionable whether plaintiff will be capable of meeting this burden if she has not retained independent counsel to advise her as to where her interests lie.

## II.

D.R. 5-102 governs withdrawal of counsel when a lawyer becomes a witness. D.R. 5-102(A) provides that if a lawyer after undertaking employment learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm shall not continue representation in the trial. In the present case, Nernberg contends that it has no intention of calling any members of the law firm as witnesses at the trial of this action. Moreover, it is not obvious to this court that any member of the firm ought to be called as a witness on behalf of plaintiff. Consequently, the provisions of D.R. 5-102(A) do not support defendant's motion to disqualify the Nernberg firm as counsel.

D.R. 5-102(B) provides that when a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation "until it is apparent that his testimony is or may be prejudicial to his client." This court is advised by Miller that he intends to call members of the Nernberg firm as witnesses. There is no indication at this stage of the proceedings, however, that such testimony will be prejudicial to plaintiff and consequently the provisions of D.R. 5-102 do not at this time provide a basis for removing Nernberg from representing plaintiff in this litigation. See, generally, Gold & Company, Inc. v. Northeast Theater Corp., supra,

and Pittsburgh and New England Trucking Company v. Reserve Insurance Company, supra.

Furthermore, if D.R. 5-102 were the only basis for disqualifying Nernberg as counsel for plaintiff, this court would seriously consider Nernberg's petition for severance in order to protect plaintiff's right to choose her counsel in this action.

## ORDER

On this December 10, 1980, it is hereby ordered that (1) additional defendants' petition for severance is denied; and (2) an evidentiary hearing is scheduled before this court on Friday, January 2, 1981 at 9:30 a.m. on defendant's petition to disqualify plaintiff's counsel.

## SUPPLEMENTAL OPINION

WETTICK, *J.*, February 3, 1981—This court previously found that the Nernberg law firm's exercise of its professional judgment on plaintiff's behalf may be affected by its personal interests and therefore ruled that under the Code of Professional Responsibility this law firm could continue representing plaintiff only with the consent of the client "after full disclosure" (D.R. 5-101(A)). A hearing was held on the issue of whether Nernberg's representation was with the consent of the client after full disclosure. At the hearing, the only witness was plaintiff Maureen C. Maher who was represented by W. Thomas Laffey of the Nernberg law firm. She offered the following testimony.

She was very dissatisfied with her previous counsel because he had not kept her informed and would not respond to her inquiries. After she dismissed her former counsel, she retained W. Thomas Laffey

of the Nernberg law firm to whom she was referred by the Lawyer Referral Service of the Allegheny County Bar Association. She is extremely pleased with Mr. Laffey. He has responded immediately to her inquiries, has kept her informed, and has aggressively pursued her claim. She has faith in her counsel and does not want to retain other counsel.

She knows that her former counsel has joined the Nernberg law firm as a third party defendant through a complaint which alleges that her losses were caused by the failure of the Nernberg law firm to provide proper representation; in fact, the Nernberg law firm provided her with a copy of defendant's complaint joining this law firm as a third party defendant at the time this law firm was joined. She believes that the claims against the Nernberg law firm are frivolous. It is her belief that her former attorney negligently pursued her claim and is now "grasping at straws" by naming her present law firm. Consequently, she does not believe that there is a real conflict in this case.

Plaintiff recognizes that the major issue in this legal malpractice action is whether or not her former counsel properly joined a New York corporation as a defendant. But she is not aware of the legal principles which govern this issue and did not consult another lawyer to determine whether there may be any merit to defendant's claim against the Nernberg law firm. Plaintiff is an intelligent and articulate person who continues to rely on the Nernberg firm because she has faith in Mr. Laffey. She trusts her judgment and consequently has elected neither to replace the Nernberg law firm nor to consult other counsel about the advisability of doing so.

This court will grant defendant's motion to dis-

qualify the Nernberg law firm from representing plaintiff because the evidence shows that plaintiff does not have an understanding of the extent of the conflict. A cursory review of defendant's complaint against the Nernberg law firm raises several issues that must be pursued before it can be determined whether the conflict is more apparent than real: at the time the Nernberg law firm took over the case, was there no possibility of pursuing plaintiff's claim against the New York corporation; why didn't the Nernberg law firm pursue plaintiff's claim against the New York corporation, at least to the point at which a trial court dismissed the claim against this party, if for no other reason than to strengthen plaintiff's malpractice claim against defendant; and why did the Nernberg law firm apparently have plaintiff execute a release, for no consideration, releasing the New York corporation from liability? Until these issues and very possibly other issues that would become apparent through a more complete review of the case are pursued, plaintiff cannot be aware of the extent of the conflict and is therefore incapable of making an informed decision as to whether or not she should retain other counsel.

The disclosure to the client of a potential conflict is insufficient. The requirement of D.R. 5-101 of "full" disclosure means that counsel must provide the client with sufficient information to permit the client to understand fully the extent of the conflict. Thus, where the conflict involves questions as to the manner in which counsel is handling a case, it is incumbent upon counsel to direct the client to consult additional counsel on the conflict issue (see Ethical Consideration 5-11).

Throughout these proceedings, the Nernberg law firm has shown a complete insensitivity to the

standards of the Code of Professional Responsibility. When the law firm settled the initial case, it was aware that it would probably be joined in the subsequent malpractice action on the ground that the settlement failed to protect plaintiff. At this time the client should have been informed of the purposes of D.R. 5-101 and of the law firm's support of the Code of Professional Responsibility and serious consideration should have been given to whether plaintiff's interests would best be promoted by referring the malpractice action to other counsel. Instead, the Nernberg law firm responded by arranging for plaintiff to release her law firm from any liability arising out of the initial action in obvious violation of the Code of Professional Responsibility. The clear message to the client of such a response is that the Code of Professional Responsibility is nothing more than a tool that the other side may be able to utilize to weaken your claim if we are not careful.

The law firm's response to this court's December 10, 1980 opinion is equally disturbing. In its opinion, this court found that the exercise of the Nernberg law firm's professional judgment on behalf of plaintiff may be affected by its personal interests and that continued representation could occur only with the consent of the client after full disclosure. Also the opinion expressly stated that the law firm's conflict of interest was so obvious that the burden would be on plaintiff to show consent after full disclosure and that it is questionable whether "plaintiff will be capable of meeting this burden if she has not retained independent counsel to advise her as to where her interests lie." Despite this opinion's findings, the Nernberg law firm never encouraged its client to consult other counsel. Such

encouragement was essential in this case because, as plaintiff's testimony established, she is living in Chicago, she knows no attorneys in Pittsburgh, and it would be inconvenient and difficult for her entirely on her own to obtain other competent counsel. Also by providing no guidance to the client, the Nernberg law firm reinforced its message that the issues involving the Code of Professional Responsibility should be seen as nothing more than efforts by defendant to weaken her claim. Thus by taking no steps to encourage plaintiff to consult other counsel, the Nernberg law firm virtually guaranteed its continued representation.

The issue is not whether the Nernberg law firm believes that it should represent its client but, instead, whether an informed client believes that this law firm should do so. The purpose of D.R. 5-101 is to ensure that an attorney's representation of a client is not colored by the attorney's potentially adverse interests. Thus when issues involving a potential conflict of interest arise, counsel must subordinate his or her desire to continue representing a client to the client's interests. This requires that counsel be alert to the desirability of recommending other counsel, educate the client as to the purposes of D.R. 5-101, and where the client cannot otherwise make an informed decision, encourage and assist the client to obtain other counsel, at least for purposes of deciding whether the client should consent to continued representation by the attorney with the potential conflict of interest. The Nernberg law firm completely failed to take such actions.

From the start, the Nernberg law firm has apparently viewed D.R. 5-101 of the Code of Professional

Responsibility solely as a potential weapon in the hands of another that may weaken its client's case and its role as utilizing every available strategy to prevent its removal. The code, however, is not a weapon designed to defeat a client's interests—it is a standard of conduct imposed upon members of the bar for the protection of their clients. And because the Nernberg law firm has failed to meet obvious and basic responsibilities to its client imposed by the Code of Professional Responsibility for the client's protection, this court is requiring plaintiff to obtain other counsel.

In reaching this decision, this court recognizes that a defendant may frivolously join a plaintiff's counsel as a third party defendant as a means of attempting to separate a party from the counsel of his or her choice. However, such a practice will not go entirely unchecked. Defendant may be required to establish a prima facie case against plaintiff's counsel in proceedings involving a motion for judgment on the pleadings or a motion for summary judgment that a court may consider before passing on a motion to disqualify counsel; counsel fees may be imposed against a party whose conduct in commencing a matter is arbitrary or in bad faith; and under section 766 of the Restatement, 2d, Torts, damages may be awarded against one who intentionally and improperly interferes with the performance of a contract between others. Also if a claim is frivolous, plaintiff at minimal cost and inconvenience will ordinarily be advised by another counsel to consent to continued representation by the plaintiff's prior counsel. Finally, even if joinder may be abused, this is simply a cost of furthering the policies of D.R. 5-101.

For these reasons, we enter the following

ORDER

On this February 3, 1981, it is hereby ordered that defendant's motion to disqualify the members of the Nernberg and Laffey law firm from representing plaintiff is granted and that all proceedings in this action are stayed for 90 days to permit plaintiff to retain other counsel.