# Pennsylvania R. R. Co. *v.* Cameron et al., Appellants.

*Carriers — Common carriers — Railroads — Bills of lading—Freight—Transportation charges—Foreign currency—Rate of exchange—Tariff rate — Interstate Commerce Commission — Judgment—Sterling currency.*

1. One who, through the assignment to him of a bill of lading, receives property which had been shipped thereon, thereby binds himself to the payment of the freight charges established by law, or fixed by the terms of the bill of lading.

2. The assignee of bills of lading upon which are endorsed conditions as to the rate of exchange applicable to the payment of ocean freight charges, in accepting assignment of such bills and using them to obtain the goods, obligates himself to pay the charges at the rates indicated.

3. The mere fact that freight charges are stamped in pounds, shillings and pence at the point of shipment in a British dominion does not give rise to a contract that they were to be paid in that currency in a foreign country.

4. Even if such charges were stamped thereon after the execution of the bill of lading, and are on such bill when presented to the assignee, they add nothing to his burden.

5. An exchange of currency or the rate of exchange determines the purchasing power or the equivalent of the currency of one country as measured by or in the currency of another.

6. When the rate is established by contract or otherwise it is a fixed rate and controls all matters brought within the scope of the operation.

7. To honor in full a bill of lading on which the charges are specified in pounds, shillings and pence with the words stamped thereon, "Freight if payable at destination to be at the rate of $4.866, exchange," there must be sufficient American currency or number of dollars required by the fixed exchange rate to purchase, or be equivalent to, the sterling named in the bill; such payment does not increase the charges named.

8. Any uncertainty in the words "if payable at destination," relates to the place where payable, and not the specie in which payable.

9. If payment were made, in such case, on the basis of the current rate of exchange, and the shipment would be for a less sum than fixed by the tariffs filed with the Interstate Commerce Commission, the payment would be unlawful.

10. American courts cannot give judgment in sterling currency.

*Accord and satisfaction—Receipt "in full settlement"—Payment of a less amount—Freight charges—Tariff rate—Carriers—Interstate Commerce Act of August 29, 1916, 39 Stat. 538—Rates—Contracts—Check—Payment in full.*

11. The mere assertion that a bill is not correct is not a basis of fact to support an accord.

12. Nor is the mere acceptance of a smaller amount an accord and satisfaction.

13. Where a check is intended to be a full payment, it should be accompanied by such words as will indicate to the party to whom it is sent that it is intended to be relied upon as a complete satisfaction of the account.

14. A receipt given by a railroad company in full settlement on a bill for freight charges is not an accord and satisfaction, where the amount accepted is at a lower rate than that specified in the bill of lading, and at a lower rate than the tariffs filed.

15. Contracts in violation of the Interstate Commerce Act of August 29, 1916, 39 Stat. 538, are void.

16. When dealing with rates, the carrier is not estopped from asserting the legality of the Interstate Commerce Act and the illegality of payments by shippers which would be in contravention of the act.

Argued March 24, 1924. Appeal, No. 148, Jan. T., 1924, by defendants, from order of C. P. No. 5, Phila. Co., June T., 1921, No. 1631, making absolute rule for judgment for want of sufficient affidavit of defense, in case of Pennsylvania Railroad Co. v. Alpin J. Cameron et al., trading as A. J. Cameron & Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for balance of freight alleged to be due.

Rule for judgment for want of sufficient affidavit of defense. Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.

Rule absolute. Defendants appealed.

*Error assigned* was order, quoting record.

*Albert L. Moise,* for appellants.—It is a rule of law that a person who has reserved to himself the right to

discharge his obligation under a contract in two or more different ways may elect, at anytime before the day of payment has passed, in which way he will discharge it: Johnson v. Ash, 142 Pa. 45; Stephens v. Howe, 34 N. Y. Superior Ct. 133.

The case which most nearly approximates the facts of the present case is Howard Houlder and Partners v. Union Marine Insurance Company, Limited, 38 Times Law Reports 515 (1922), House of Lords. See also Luella C. & C. Co. v. Gano, 61 Pa. Superior Ct. 37; U. S. Casualty Co. v. Mather, 67 Pa. Superior Ct. 42.

Attached to the affidavit of defense are copies of the statements showing how each amount was made up, followed by a receipt signed by appellant, of an amount "in full settlement of above account." This brings the case directly within Luella Coal & Coke Co. v. Gano, 61 Pa. Superior Ct. 37. See also Bernstein v. Hirsch, 33 Pa. Superior Ct. 87; Washington Gas Co. v. Johnson, 123 Pa. 576; Ziegler v. McFarland, 147 Pa. 607; Christman v. Martin, 7 Pa. Superior Ct. 568.

To the same effect is U. S. Casualty Co. v. Mather, 67 Pa. Superior Ct. 42.

*Francis B. Biddle,* of *Barnes, Biddle & Morris,* for appellee.—The assignee of a bill of lading becomes liable to pay the charges: Ry., etc., v. York, etc., Co., 215 Mass. 36; Nav. Co. v. Young, 3 Ed. Smith (N. Y.) 187.

Where the consignee pays a portion of the freight charges, there arises from the act of payment an implied promise to pay the balance: Union Pacific R. R. v. Smelting Co., 202 Fed. 720.

Since contracts in violation of the Interstate Commerce Act are void (R. R. v. Prescott, 240 U. S. 641, 1916) when dealing with rates (Armour Packing Co. v. U. S., 209 U. S. 56), the carrier cannot under any circumstances be estopped from asserting the legality of the Interstate Commerce Act and the illegality of payments by shippers which would be in contravention of the act

(Ill. Cent. R. R. v. Henderson Co., 226 U. S. 441; P. & R. Ry. v. Baer, 56 Pa. Superior Ct. 307; Sumner v. Walker, 30 Fed. 261; The Querini Stamphalia, 19 Fed. 123.

Payment of a less sum than the debt, where the debt is liquidated, is not an accord: Amsler v. McClure, 238 Pa. 409; Societe,. etc., v. Loeb, 239 Pa. 264; Tustin v. Coal & Iron Co., 250 Pa. 425; Foye v. Coal & Coke Co., 251 Pa. 409; Dimmick v. Banning Co., 256 Pa. 295.

OPINION BY MR. JUSTICE KEPHART, April 28, 1924:

Bills of lading were issued in Australia for wool purchased there by appellants, shipped to ports on our western coast and thence trans-shipped by rail to Philadelphia.  The bills, which were remitted to Brown Brothers & Co., bankers, and transferred to appellants specified the charges for freight in pounds, shillings and pence, and were stamped "Freight if payable at destination to be at the rate of $4.866 exchange," or other equivalent words.  Appellants tendered payment in pounds sterling, but refused to pay an amount in dollars based on the exchange named in each bill; that tender was refused; subsequently part was paid in dollars, calculated on the current rate, which was much below the amount expressed in the bill.  The receipt for each payment purports to be in full for each shipment. This money was accepted on account by the terminal carrier who thereafter sued in this and other actions to recover the balance.  Judgment was directed for plaintiff, based on the decision in 78 Pa. Superior Ct. 497, between the same parties.

It is urged that, inasmuch as the freight rate or structure of the bill of lading from Australia to Philadelphia could not be made or governed in its entirety under a rate or form filed with the Interstate Commerce Commission, and as there is no law or tariff schedule regulating the rate of exchange, the arbitrary rate stamped on the bill is not binding when it is denied the rate was placed

on the bill when issued; that if effective it gave merely an option to pay either in dollars or currency mentioned in the bill.

A complete answer to the first part of this argument may be found in the opinion of the Superior Court in the former case.  Of course the Interstate Commerce Commission would not have jurisdiction over rates established for foreign vessels, but the rate of exchange need not depend on a rule of the commission requiring the carrier to collect in dollars a definite sum for carriage, thus eliminating sterling's current rates; and here the contract of shipment controls.  Even if the words objected to had been placed thereon after execution, the stamped insertion was on the bills of lading when received by Brown Brothers & Co., and nothing was then added to appellant's burden; if anything, the contract was clarified.  At any rate, if appellants did not like it, they could have refused to accept the goods.  As stated by Judge HENDERSON of the Superior Court, in the case of Pennsylvania Railroad Co. v. A. J. Cameron & Co., 78 Pa. Superior Ct. 497, 501, "We consider the doctrine well established that one who, through the assignment to him of a bill of lading, receives the property, thereby binds himself to the payment of the freight charges established by law or fixed by the terms of the contract under which the property is acquired from the carrier: Phila. & Reading R. R. Co. v. Baer, 56 Pa. Superior Ct. 307; West Jersey & Seashore R. R. Co. v. Whiting L. Co., 71 Pa. Superior Ct. 161......In accepting the assignment of the bills of lading with the freight charge endorsed thereon and using the same to obtain possession of the goods from the carrier, there was an implied obligation to pay according to the tenor of the bills of lading as delivered to the plaintiff."

On appellant's contention, payment might have been in sterling; the mere fact the freight charges were stamped in pounds, shillings and pence at the point of shipment in Australia does not give rise to a contract

that they were to be paid in this currency in a foreign country. There is nothing unintelligible or ambiguous in the words relating to exchange at $4.86. An exchange of currency or the rate of exchange determines the purchasing power or equivalent of the currency of one country as measured by or in the currency of another. As the rate which normally affects business transactions fluctuates from day to day, it is more commonly expressed as the current rate of exchange. When the rate is established by contract or otherwise, it is a fixed rate and controls all matters brought within the scope of its operation. What is stamped on the bill expressly excluded current rate of exchange.

To honor in full the bill of lading there must be sufficient American currency or number of dollars required by the fixed exchange rate to purchase or be the equivalent of the sterling named in the bill of lading; such payment does not increase the freight charges specified in the bill. Any uncertainty in the words "if payable at destination" relates to the place where payable, and not the specie in which payable. Freight was payable at the destination, and of course in American currency: Benners v. Clemens, 58 Pa. 24; Juilliard v. Greenman, 110 U. S. 421; 3 Williston on Contracts 3127. Our courts cannot give judgment in sterling currency. It would be ineffective, as there would be no means to enforce it; therefore they must reduce the pounds, shillings and pence mentioned in the bill of lading into American currency at the rate there fixed, which is the par nominal or normal rate of exchange. If payment was to be made on the basis of the current rate of exchange, the shipment over American lines would be for a less sum in dollars than fixed by the tariffs filed with the Interstate Commerce Commission; this would be unlawful. Appellant did not have the option to pay in sterling, but must be held to payment in currency of the United States.

It is urged there is nothing on the bills or in the statement to show the terminal carrier is not attempting to collect the excess between the current rate and that stipulated in the bills, for its own benefit, rather than for itself and other carriers,—enforcing the arbitrary rate might enable the carrier to collect more than the rate fixed in the schedule. An examination of the bills and the statement shows the charges were made up from the ocean carrier's charges (a matter of agreement) and the transcontinental carriers' charges (based upon tariffs filed with the Interstate Commerce Commission). For illustration, take the photostatic bills of lading in the record. There were 24,822 pounds of scoured wool and 6,866 pounds of greasy wool; shipped at the respective rail rates of $1.05 and $.75 per hundred, the rail carriage amounted to $307.63. The ocean carrier charges were 220£, 16s, 3d. As it was impossible to know in advance the current rate of exchange at a future time, and because of the probable fluctuation in that rate from the date of water shipment to time of arrival in this country, or when the goods were delivered, a fixed exchange was necessary. It was agreed it should be the normal par rate of $4.8666 to the pound. When the dollars were exchanged the total amount of the charges was 284£, 6d (the sum of the two bills of lading, i. e. 173£, 2s, 9d and 110£, 17s, 9d). The first rail carrier turned over to the steamship company $1,074.64, the equivalent of 220£, 16s, 3d exchange at the normal rate of $4.8666, which, added to the railroad charges, made, according to tariff schedule, $307.63, or a total of $1,-382.27, which, exchanged at the normal rate, equals 284£, 6d. It will thus be seen the railroad paid the steamship the equivalent of sterling in dollars exchanged at the normal rate, and not the then current rate. All elements of speculation were thus eliminated.

The receipt given was in full payment "of the above account," but, as pointed out by the Superior Court, there was no substantial dispute between the parties.

The mere assertion that a bill is not correct is not a basis of fact to support an accord. Nor did the acceptance of a less amount by plaintiff discharge the obligation. It must not be understood that we intend to wipe out all the efficacy of a check which is given in full settlement of an account. We stated in Foye v. Lilley Coal & Coke Company, 251 Pa. 409, 417, that the check should be accompanied by such words as would indicate to the party to whom it was sent that it was intended to be relied on as a complete satisfaction of the account. Where books of account are kept, and these payments are regularly entered, of course there is little difficulty in tracing the various payments made, as well as the charges upon which they are based. But consideration must be given to those who buy rarely and depend largely on checks as evidence of payment; these are practically the only things in their possession to offset a charge occasioned through careless bookkeeping; therefore the value of the check as a conclusive receipt against charges should not be entirely wiped out. Business and other requirements demand that some point be reached where litigation may be made difficult, and the courts may not continue to be guardians of the careless.

It is important, then, that the check should call attention to the effect intended. A statement that a check is in full settlement of all claims and demands, and is accepted as such, should indicate to the person receiving it that the paper intends to close all accounts between the parties, and courts should give effect to checks of that sort. Without determining the specific language necessary, or appellants' position on this phase of the question, plaintiff could not legally accept a less sum than the full amount. The law respecting rebates, discriminations, etc., as noted above, is very severe, and even if the receipt had issued as claimed, the only method of wiping out the claim was a judicial determination of it adversely to appellee. Unquestionably a part of this money was necessary to pay freight charges from the

Pacific Coast to Philadelphia, and this carrier could not collect anything but the full amount.

Contracts in violation of the Interstate Commerce Act are void (Southern Railway Co. v. Prescott, 240 U. S. 632, 1916). When dealing with rates (Armour Packing Co. v. U. S., 209 U. S. 56, 1908), the carrier is not estopped from asserting the legality of the Interstate Commerce Act and the illegality of payments by shippers which would be in contravention of the act (Ill. Central R. R. v. Henderson Elevator Co., 226 U. S. 441, 1912; Phila. & Reading Railway Co. v. Baer, 56 Pa. Superior Ct. 307, 1914).

We are satisfied, on a review of all the record, that judgment was correctly entered in the court below.

The assignments of error are dismissed, and the judgment is affirmed.