Dippel et al., Appellants, *v.* Brunozzi.

Argued May 23, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*James P. Costello, Jr.,* with him *Leo T. Connor* and *Edmund J. McCullough,* for appellants.

*Mitchell Jenkins,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, June 26, 1950:

Plaintiffs brought action to recover the balance of the purchase money alleged to be due on the sale to defendant of two Lorain shovels and a tractor. The complaint set forth an oral agreement between the parties that the purchase price of these three articles should be $33,000, and that, in addition, defendant should pay the cost of transportation and insurance, which amounted to $949.03, or a total of $33,949.03, on account of which defendant had paid $20,213.15, leaving a balance due of $13,735.88. Defendant filed an answer in which he admitted the averments of the complaint but set forth new matter and a counterclaim. He averred that the shovels and tractor were second-hand but warranted by plain-

tiffs to be in first class condition, thoroughly workable and in good repair; when they arrived, however, he found that they were all defective, in bad repair, unworkable and not in first class condition, so that he was unable to use them for the purpose for which he had bought them. The result was that he was obliged to expend for repairs the sum of $11,500 and for the purchase of a bulldozer the sum of $6,000, and he also suffered a loss of profits in the amount of $30,000 because of inability to operate the coal stripping project in which he was engaged. He further averred that the price regulations of the Office of Price Administration at the time he purchased this equipment provided that the maximum price at which second-hand equipment could be resold was 55% of its base price when new, and under that provision the maximum prices legally chargeable for the Lorain shovels were $5,610 and $11,770 respectively and for the tractor $4,950, or a total of $22,330; consequently the charge of $33,000 was in violation of the regulations, with the result that the sale was null and void and of no effect; therefore he also claimed the return of the $20,213.15 paid by him on account. Plaintiffs moved to strike off the counterclaim on the ground that it failed to state a claim upon which relief could be granted. They asserted that defendant's allegation as to the maximum price legally chargeable constituted an attempt by him to raise the defense of illegality of the transaction and thereby he admitted that a counterclaim arising out of the transaction was not available to him. The court sustained this contention and held that defendant could not recover on the counterclaim because of the illegality of the transaction which he himself averred, but the court went further and held that plaintiffs' demurrer to the counterclaim was an admission on their own part that the contract was illegal; therefore the court, of its own motion, dismissed the entire proceedings. Plaintiffs appeal from that action of the court below.

The Emergency Price Control Act of January 30, 1942, c. 26, Title 1, §4, 56 Stat. 23 (50 U. S. C. A. §904) declared it to be unlawful for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, in violation of any regulation or order made in pursuance of the Act. Therefore such a sale or such a purchase, during the time when the Act was in effect, was against public policy and consequently unenforceable.[1] This accords with the general rule that an agreement which violates a provision of a statute, or which cannot be performed without violation of such a provision, is illegal and void: *Pennsylvania R. R. Co. v. Cameron*, 280 Pa. 458, 466, 124 A. 638, 640 (contract in violation of the Interstate Commerce Act) ; *Kimble v. Wilson*, 352 Pa. 275, 281, 282, 42 A. 2d 526, 529 (contract violating the Public Utility Law) ; *Kissell v. Motor Age Transit Lines*, 357 Pa. 204, 209, 53 A. 2d 593, 595 (violation of the Federal Motor Carrier Act). Where a contract is found to be against public policy "it cannot, under any circumstances, be made the basis of a cause of action. The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them. If they have fully executed their unlawful contract, the law will not disturb them in the possession of what each has acquired under it. If one has executed in whole or in part, the law turns a deaf ear when he pleads for its aid to compel the other to do as much . . . .

---

[1] *International Spangles Corporation v. Marrow Manufacturing Corporation*, 294 N. Y. 295, 62 N. E. 2d 77; *Palmer v. Mayer*, 330 Ill. App. 619, 71 N. E. 2d 822; *Morgan Ice Co. v. Barfield*, 190 S. W. 2d 847 (Tex Civ. App.) ; *A. B. Lewis Co. v. Jackson*, 199 S. W. 2d 853 (Tex. Civ. App.) ; *Walker v. Bailey*, 33 Ala. App. 284, 33 So. 2d 891; *Perma-Stone Corporation v. Merkel*, 255 Wis. 565, 39 N. W. 2d 730; *Enterprise Frame & Novelty Corporation v. Schieman*, 49 N. Y. S. 2d 860; *Weisburd v. G. R. Kinney Co., Inc.*, 57 N. Y. S. 2d 49; *Toll v. Freidman*, 65 N. Y. S. 2d 555; 74 N. Y. S. 2d 176.

If the contract is still executory, the promisor is left undisturbed in the possession of the money or other property which he agreed to pay or transfer; if the contract has been executed, the promisee is left undisturbed in the possession of the money or other property which has been paid or conveyed to him": *Pittsburg v. Goshorn,* 230 Pa. 212, 227, 79 A. 505, 510; see also *New York & Pennsylvania Co. v. Cunard Coal Co.,* 286 Pa. 72, 81, 82, 132 A. 828, 831; 12 Am. Jur. 724, 725, §213. It is clear, therefore, that in view of defendant's averment that the purchase price in this case exceeded the maximum amount legally chargeable he cannot successfully claim relief by way of recovery of the money paid by him on account, and the court below properly so held; indeed defendant has not appealed from that decision.

This brings us to the real question in the case, namely, whether the court was justified in dismissing the action altogether. It is true that whenever it appears that the enforcement of a contract would violate public policy the court should refuse to proceed in an action based solely upon it, and should dismiss the proceedings of its own motion: *Waychoff v. Waychoff,* 309 Pa. 300, 308, 163 A. 670, 672. But was the illegality of the present transaction established in such manner as to warrant the dismissal of the entire proceedings? The court held that by demurring to the counterclaim plaintiffs admitted the averment therein that the maximum price legally chargeable was less than the price actually charged and that therefore the contract of sale was null and void. This indicates a misapprehension on the part of the court of the nature and effect of a demurrer. While it is commonly said that a demurrer admits the truth of all the relevant facts pleaded this does not mean that it admits those facts as a finality and for all purposes and that therefore the demurrant cannot be allowed to assert the contrary in any subsequent proceedings; if that were so the demurrant, upon his demurrer being overruled,

could not thereupon file an answer denying the facts stated in the pleading to which he had demurred. All that a demurrer does is to admit the facts for the *sole purpose* of testing the legal sufficiency of the challenged pleading; what it says in effect is that even if the facts set forth be true they do not constitute a legal claim, or defense to the claim, as the case may be. "A 'demurrer' is not an absolute admission of any fact, but simply admits those facts that are well pleaded for the sole purpose of having their legal sufficiency determined by the court": *Doughty v. Pallissard,* 3 N. Y. S. 2d 452, 454, 167 Misc. 55, cited in footnote to *Commonwealth, ex rel. Duff, Attorney General, v. Keenan,* 347 Pa. 574, 582, 33 A. 2d 244, 248; see also *Architectural Tile Co. v. McSorley,* 311 Pa. 299, 301, 166 A. 913. When plaintiffs demurred to defendant's counterclaim they were merely asserting thereby that, taking defendant at his own word that the O. P. A. regulations had been violated, it would follow that he could not recover on his counterclaim, but that this statement *was* true was not thereby admitted as binding upon them in any other or further proceedings. Maximum Price Regulation No. 136, sec. 12(b)(2) provided that the maximum price of a rebuilt and guaranteed product was 85% of its base price, —the base price being the price of the same product when new. Sec. 12(c) provided that the maximum price for any second-hand product that did not qualify as rebuilt and guaranteed should be 55% of the base price. The present state of the record furnishes no information whatever as to the base price, or whether the shovels and tractor sold by plaintiffs to defendant had been rebuilt or whether they had been sold as such. If and when these necessary facts are ascertained it can then be determined whether the contract of sale was legal or illegal and whether recovery by plaintiffs of the balance of the purchase money should be allowed or denied accordingly. If the contract be found to have been legal,

defendant must then be afforded the right to assert the claim for the alleged breach of warranty set forth in his answer to the complaint.

In *Ross v. C. & S. Coal & Clay Co.*, 350 Pa. 548, 39 A. 2d 584, the case upon which defendant chiefly relies, an action for breach of warranty of the contract was upheld where the sale was of a rebuilt and guaranteed second-hand shovel and the price charged was not in excess of the regulations governing the sale of a shovel of that type. It appearing, however, that parts of the shovel were found to be worn, broken and unfit for use and that the shovel was not reconditioned or rebuilt, the purchaser was allowed to recover as damages for the breach of warranty the difference between the contract price and the value of the shovel as received, and the latter amount was held to be the O. P. A. ceiling price of such a shovel as the one delivered. The reason why there the purchaser was allowed to recover on the warranty was because the amount he had agreed to pay was lawful; there would have been no violation of the regulation had the shovel been as warranted. In the present case defendant does not allege that the price charged would have been lawful if the articles had been as warranted; on the contrary he apparently asserts that even in that event the price would have exceeded the maximum permitted by the regulations. As already stated, however, if the contract in the present case is finally found to have been lawful defendant will have the same right to assert his claim for breach of warranty as was upheld in the *Ross* case.

The order dismissing the proceedings is reversed with a procedendo, costs to abide the event.