## Grassi et al. v. Rubert

*F. J. Marolla*, for plaintiffs.

*W. Stein*, for defendant.

HAGAN, J., February 2, 1953.—The matter before the court is a petition of defendant for a rule upon plaintiff to show cause why a judgment confessed by plaintiff against defendant under a warrant of attorney contained in a lease should not be opened and forever barred. Plaintiff filed an answer to the petition, and the matter was then ordered on the motion list for disposition on petition and answer and a written stipulation of agreed facts.

It appears that on June 19, 1950, defendant, as lessee, and Francis J. Lambert, agent, as lessor, ex-

ecuted a written lease of an apartment in premises 301 W. School House Lane, Philadelphia, for the term of one year from June 1, 1950, at a rental of $125 per month, and providing for automatic annual renewals unless terminated by either lessor or lessee giving to the other 60 days' written notice prior to the end of any annual term. Prior to the confession of judgment under the lease, it was assigned to plaintiffs in this action.

On May 22, 1952, attorney for defendant lessee wrote a letter to lessor reading, in part, as follows:

"Mrs. Rubert has left with me a check for $125.00, which check has been deposited in my attorney's account, and I will await your instruction as to the amount of rent which is to be paid to you as of the first of the month. Furthermore, in behalf of my client I wish to advise you that the instant lease being in violation of the law is considered void and of no effect and that my client is in possession as a tenant at will, at such rent as will be considered fair and just by the Office of Rent Stabilization commencing June 1st. I likewise take this opportunity to inform you that this new oral lease is in effect for a period of 60 days and that my client will move from the premises on or about the 31st day of July, 1952."

Defendant's contention that the lease was void and of no effect was based upon the fact that the rental of $125 per month stipulated in the lease exceeded the maximum rental prescribed by the Area Rent Director, acting under the provisions of the Federal Housing and Rent Act of 1947. The maximum rentals permitted under the act for the leased premises were as follows: From June 1, 1950, to May 21, 1952, $63.50 per month; and from May 22, 1952, $100 per month. Thus, the monthly rental stipulated in the lease and paid by defendant lessee for a period of two years was almost double the legal rate.

Lessor refused to accept the above-quoted letter of defendant's attorney as a termination of the lease, and refused to recognize the short-term tenancy of the apartment proposed in the letter. Defendant continued to occupy the apartment until June 23, 1952, when she vacated. At the time lessee vacated, she had not paid to lessor any sum for the occupancy of the apartment for the months of June and July. Through her counsel she has tendered to lessor the sum of $200 for her occupancy of the apartment during the months of June and July, but lessor has refused this tender.

On October 17, 1952, plaintiff in this action caused judgment to be confessed against lessee, in pursuance of authority contained in the aforesaid lease, and damages were assessed under said judgment in the sum of $428.53, made up of rentals for the months of June and July 1952, (during which months defendant was in possession of the apartment), and rentals for the months of August and September 1952, during which months the apartment was alleged to have been untenanted; together with counsel fee and interest.

Suit has been instituted by defendant against plaintiff in the United States District Court for the Eastern District of Pennsylvania to recover the amount by which the rentals paid by defendant during the period of the occupancy of her apartment exceeded the maximum limits prescribed by the Area Rent Director under the Federal Housing and Rent Act, and this action has not yet been determined.

Defendant's petition to open the judgment alleges that the lease upon which judgment was entered was in violation of an act of Congress and, therefore, it was against public policy, illegal, void and unenforcible.

It having been admitted as part of the stipulated facts in the case that the rental stipulated in the lease was in excess of the maximum permited under the Act of Congress, the sole question in the case is whether

or not the lease is illegal, void and unenforcible in respect to all of its provisions, including the right to confess judgment against lessee. The determination of this question depends upon the construction to be given to the pertinent sections of the Act of Congress of June 30, 1947, c. 163, title II, 61 Stat. at L. 197, 50 U. S. C., §§1881 et seq., known as the Federal Housing and Rent Act of 1947, as amended, and in effect at the time of the execution of the lease.

Title II, sec. 204 (*b*) (1), of the act provided, in part, as follows:

". . . during the period beginning on the effective date of this title [July 1, 1947] and ending on the date this title ceases to be in effect, no person shall demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations greater than the maximum rent established under the authority of the Emergency Price Control Act of 1942, as amended, and in effect wth respect thereto on June 30, 1947 . . ."

Title II, sec. 206 (*a*) (1), provided, in part, as follows:

"It shall be unlawful for any person to demand, accept, receive or retain any rent for the use or occupancy of any controlled housing accommodations in excess of the maximum rent prescribed under [section 204]."

Thus, the act of Congress specifically brands as "unlawful" the acceptance by a landlord of any rent in excess of the prescribed maximum. In the instant case, the landlord, under the express provisions of a written lease, collected from his tenant for a period of two years a monthly rental in a sum almost double the maximum allowed by the Federal law.

The settled law of Pennsylvania is that a contract which violates a provision of a statute or an act of Congress is against public policy and is, therefore, illegal, void and unenforcible.

Thus, in Pittsburg v. Goshorn, 230 Pa. 212, the City of Pittsburgh sued to recover from defendant commissions collected by him in his capacity as collector of delinquent taxes for the city during his term of office. The commissions had been collected by defendant in accordance with an ordinance of council, fixing the compensation of the collector of delinquent taxes at a certain percentage of his collections. The city sought to avoid the effect of the provisions of the ordinance by showing that defendant, as a condition of his appointment, had executed a written agreement with the mayor of the city, by the terms of which he had bound himself to accept a fixed sum for his services in lieu of the commissions allowed him by the ordinance. Under these facts, the lower court entered judgment for plaintiff; but the Supreme Court reversed this judgment and entered judgment for defendant on the ground that the contract betwen the mayor of the city and the defendant violated the basic law of the State prohibiting a public officer from contributing or paying any money or other valuable thing to secure his appointment and that, therefore, the contract was contrary to public policy and unenforcible. In the course of its opinion, the Supreme Court said (page 227) :

". . . If then this contract offends against public policy, as it unquestionably does, the legal results which follow are far more serious than those which attach to a contract simply ultra vires. The latter is illegal only in the sense that it lacks authority for the making; the infirmity is remediable; it may be cured by subsequent ratification, and is even enforcible against a party who has received the benefits under it and afterwards seeks to repudiate it. What results to a contract against public policy is a total and irremediable paralysis, which leaves it absolutely without any force or effect whatever, so that it cannot, under any circumstances,

be made the basis of a cause of action. The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them. If they have fully executed their unlawful contract, the law will not disturb them in the possession of what each has acquired under it. If one has executed in whole or in part, the law turns a deaf ear when he pleads for its aid to compel the other to do as much. In the latter case the maxim in pari delicto melior est conditio possidentis applies. The 'conditio' referred to in the maxim, as explained by Mr. Pomeroy, in his work on equity jurisprudence, is clearly the condition of the parties with respect to their property rights created by or resulting from the contract. If the contract is still executory, the promisor is left undisturbed in the possession of the money or other property which he agreed to pay or transfer; if the contract has been executed, the promisee is left undisturbed in the possession of the money or other property which has been paid or conveyed to him. Now the result must be the same whether the contract here sought to be enforced be regarded as executed or executory. If the former, the law leaves the parties in possession of what has been acquired under it; if executory, it refuses to enforce it. In either case the city is remediless . . ."

In New York & Pennsylvania Co. v. Cunard Coal Co., 286 Pa. 72, plaintiff, a manufacturing company, sought to recover from defendant, a mining company, a sum of money voluntarily paid by defendant to plaintiff in excess of a price fixed by an act of Congress known as the Lever Act (which was part of the 1918 war legislation of the United States Government), for coal sold and delivered by defendant to plaintiff. The Supreme Court held (page 81) : (1) That the contract between the parties was "a plain attempt to evade the regulations made by the Government and was, therefore, unlawful", and (2) that, therefore, the courts will not

lend their aid to either party in the enforcement of the contract.

In Dippel et al. v. Brunozzi, 365 Pa. 264, plaintiff filed a complaint in which he sought to recover from defendant the balance of the purchase price alleged to be due on a sale to defendant of two second-hand Lorain shovels and a tractor. Defendant filed an answer in which, inter alia, he averred that the sale price of the second-hand equipment was in excess of the maximum fixed by the Federal Office of Price Administration, in accordance with the Emergency Price Control Act of Congress of January 30, 1942, and defendant also filed a counterclaim to recover from plaintiff the amount paid on account of the contract price. Under these facts the lower court, of its own motion, dismissed the entire proceedings, striking down not only defendant's counterclaim (which admitted the illegality of the sale), but plaintiff's claim as well, on the ground that the entire sale was in violation of an act of Congress and was, therefore, unlawful and unenforcible as to both plaintiff and defendant. On appeal by plaintiff, the Supreme Court held that the pleadings did not show sufficient facts from which it could be concluded, as a matter of law that, as to plaintiff, the sale was in violation of the Act of Congress; and the order of the lower court was reversed with a procedendo. In its opinion, the Supreme Court reaffirmed the principle that a contract which violates a provision of an act of Congress is illegal, void and unenforcible; and that, therefore, if it should be determined by the court that the contract price was in excess of the maximum fixed by the act of Congress, the claim of plaintiff should be dismissed. At page 267 the court said:

"The Emergency Price Control Act of January 30, 1942, c. 26, Title 1, §4, 56 Stat. 23 (50 U. S. C. A. sec. 904) declared it to be unlawful for any person to sell or deliver any commodity, or in the course of trade or

business to buy or receive any commodity, in violation of any regulation or order made in pursuance of the Act. Therefore such a sale or such a purchase, during the time when the Act was in effect, was against public policy and consequently unenforceable. This accords with the general rule that an agreement which violates a provision of a statute, or which cannot be performed without violation of such a provision, is illegal and void: Pennsylvania R. R. Co. v. Cameron, 280 Pa. 458, 466, 124 A. 638, 640 (contract in violation of the Interstate Commerce Act) ; Kimble v. Wilson, 352 Pa. 275, 281, 282, 42 A. 2d 526, 529 (contract violating the Public Utility Law) ; Kissell v. Motor Age Transit Lines, 357 Pa. 204, 209, 53 A. 2d 593, 595 (violation of the Federal Motor Carrier Act). Where a contract is found to be against public policy 'it cannot, under any circumstances, be made the basis of a cause of action. The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them. If they have fully executed their unlawful contract, the law will not disturb them in the possession of what each has acquired under it. If one has executed in whole or in part, the law turns a deaf ear when he pleads for its aid to compel the other to do as much. . . . If the contract is still executory, the promisor is left undisturbed in the possession of the money or other property which he agreed to pay or transfer; if the contract has been executed, the promisee is left undisturbed in the possession of the money or other property which has been paid or conveyed to him': Pittsburg v. Goshorn, 230 Pa. 212, 227, 79 A. 505, 510; see also New York & Pennsylvania Co. v. Cunard Coal Co., 286 Pa. 72, 81, 82, 132 A. 828, 831; 12 Am. Jur. 724, 725, sec. 213. It is clear, therefore, that in view of defendant's averment that the purchase price in this case exceeded the maximum amount legally chargeable he cannot successfully claim relief by way

of recovery of the money paid by him on account, and the court below properly so held; indeed defendant has not appealed from that decision."

It is apparent from the foregoing cases that it is now the settled law of Pennsylvania that the courts of this State will not lend their aid to the enforcement of any contract executed in violation of an act of Congress or statute of the State.

The lease under consideration is in plain violation of the act of Congress known as the Federal Housing and Rent Act of 1947, in that lessor exacted from lessee for a period of two years a monthly rental almost double the maximum permitted by the act. As heretofore stated, the act expressly declared that "it shall be unlawful for any person to . . . demand, accept or receive any rent . . . in excess of the maximum rent . . ." prescribed by the Area Rent Director.

Counsel for lessor expressly admits that the lease was in violation of the act of Congress, but he advances the specious argument that, while the act makes unlawful the receipt by a landlord of any rent in excess of the prescribed maximum, it "does not contemplate that a lease in which excess rent is charged over the amount of rent within the maximum should be illegal, and does not purport to affect the legality of such a lease in any way".

In attempting to support his position, lessor's counsel cites a number of Federal decisions, none of which is in point. The cited cases involve either the legal consequences to a landlord (1) when he fails to register rented premises with the Area Rent Director, or (2) when suit is instituted against him either by the tenant or the United States under a provision of the Federal Rent and Housing Act of 1947, as amended, which renders a landlord who received rent in excess of the maximum prescribed by the act liable for liquidated damages, costs and attorney's fees.

None of the cases cited by lessor's counsel is at variance with the settled principle of this State that a contract which violates an act of Congress is illegal and unenforcible. The circumstance that a landlord subjects himself to specific penalties under the provisions of the Federal Housing and Rent Act, when in a written lease he unlawfully exacts from his tenant rentals in violation of the act, does not validate the lease. Throughout section 203 of the act frequent use is made of the term "valid written lease", in plain contradistinction to a lease which is in violation of the provisions of the act.

For these reasons we hold that the lease under consideration is invalid and unenforcible; and petitioner's rule to show cause why the judgment confessed against defendant under the lease should not be opened and forever barred is made absolute.