

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-1995

# Development Fin. Corp. v Apha Housing & Health Care, Inc.

Precedential or Non-Precedential:

Docket 94-3519

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Development Fin. Corp. v Apha Housing & Health Care, Inc." (1995). *1995 Decisions.* Paper 111.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/111

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3519


DEVELOPMENT FINANCE CORPORATION;
THE NATIONAL HOUSING AND HEALTH CARE TRUST, INC.,
                    Appellees,
                        v.

        ALPHA HOUSING & HEALTH CARE, INC.,
                    Appellee,
                        v.

            JOHN SOWER; WILBUR DOVE,
                        Third Party Defendants.


            SYLVAN ASSOCIATES, INC.,*
                (*Pursuant to Rule 12(a), F.R.A.P.)
                    Appellant.


    ON APPEAL FROM THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
                (D.C. No. 94-cv-00627)


            Argued March 10, 1995

Before:    HUTCHINSON, ALITO, and SAROKIN, Circuit Judges

        (Opinion filed:  April 26, 1995)


                        John Alan Conte
                        Robert A. Krebs (argued)
                        Conte, Melton & D'Antonio
                        300 Ninth Street
                        Conway, PA 15207

                        Attorneys for Appellant

George E. Pallas (argued)
Andrea B. Dillon
Cohen & Huntington, P.C.
1515 Market Street, Suite 818
Philadelphia, PA 19102

<u>Attorneys for Appellees
Development Finance Corp.
and The National Housing
and Health Care Trust,
Inc.</u>

Louis Pomerico
Pomerico, Leymarie, Clark &
Punture
1406 East Washington Street
New Castle, PA  16101

<u>Attorney for Appellee
Alpha Housing & Health
Care, Inc.</u>

OPINION OF THE COURT

SAROKIN, <u>Circuit Judge</u>:

Sylvan Associates, Inc. ("Sylvan" or "applicant"), the sole member of defendant Alpha Housing & Health Care, Inc. ("Alpha"), a nonprofit corporation, appeals from the denial of its motion to intervene as a third-party plaintiff in an action for breach of contract.  Sylvan wishes to argue that the contracts between plaintiffs and defendant were <u>ultra</u> <u>vires</u>, a claim that defendant itself is prohibited from raising under Pennsylvania law.

                            I.

Plaintiff Development Finance Corp. ("DEFCO") entered into a contract to assist defendant in arranging financing for the

acquisition of nursing home facilities. After defendant purchased two facilities, it entered into a contract with plaintiff The National Housing and Health Care Trust, Inc. ("National Housing") whereby National Housing would assist in the management of the nursing homes. DEFCO and defendant subsequently executed another contract providing for revised terms of payment for DEFCO's services. DEFCO and National Housing now sue for defendant's alleged breach of the agreements. Federal jurisdiction for the original claims is based on the diversity of citizenship between plaintiffs and defendant, pursuant to 28 U.S.C. §1332.

Sylvan first moved to intervene as of right as a defendant, in order to assert as a defense that the agreements between plaintiffs and defendant were ultra vires. The district court denied the motion, Appendix ("App.") at 63, and Sylvan did not appeal.

Recasting its argument, Sylvan again moved to intervene as of right, this time as a third-party plaintiff, in an effort to enjoin performance of defendant's contracts with plaintiffs pursuant to 15 Pa.C.S. §5503(a)(1). The action asked the district court to grant plaintiffs only "such compensation as may be equitable," as the Pennsylvania statute provides. The district court denied the motion without a written decision. App. at 111. Sylvan filed a timely notice of appeal, and we have jurisdiction under 28 U.S.C. §1291 because the denial of a motion to intervene as of right is a final, appealable order. United

States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1179 (3d Cir. 1994).

## II.

We review the denial of a motion to intervene as of right for abuse of discretion. Alcan Aluminum, 25 F.3d at 1179; Brody v. Spang, 957 F.2d 1108, 1115 (3d Cir. 1992). However, we will reverse "only if we find the district court 'has applied an improper legal standard or reached a decision we are confident is incorrect.'" Alcan Aluminum, 25 F.3d at 1179 (quoting Brody, 957 F.2d at 1115).

We must begin with a jurisdictional issue. As the party asserting jurisdiction, Sylvan bears the burden of showing that its claims are properly before the district court. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir.), cert. denied, 114 S.Ct. 440 (1993).

Sylvan and Alpha are both incorporated under the laws of Pennsylvania. It is axiomatic that the federal judiciary's diversity jurisdiction depends on complete diversity between all plaintiffs and all defendants. See 28 U.S.C. §1332; Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); Singh v. Daimler-Benz AG, 9 F.3d 303, 305 (3d Cir. 1993). Sylvan concedes that there is no diversity of citizenship between itself and Alpha; both are Pennsylvania corporations. Intervenor's Brief at 20.

Sylvan contends that the district court has supplemental jurisdiction over its claim pursuant to 28 U.S.C. §1367(a), the recent codification of common law "pendent" and "ancillary" jurisdiction. Section 1367(a) provides

> Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C.A. §1367(a) (1993).

## A. §1367(b)

Subsection (b)'s limitation on the general grant of supplemental jurisdiction raises the most obvious problems for Sylvan:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district court shall not have supplemental jurisdiction . . . over claims by persons . . . seeking to intervene as plaintiffs under Rule 24, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C.A. §1367(b) (1993) (emphasis added). Sylvan does not dispute that the district court's original jurisdiction was "founded solely on section 1332" and that Sylvan has captioned its motion as one to intervene as a plaintiff. App. at 64. At first glance, then, §1367(b) would appear to deprive the district court of jurisdiction over Sylvan's claim against Alpha.

District courts considering §1367(b) have generally concluded that in a diversity action, the section eliminates supplemental jurisdiction over the claims of a plaintiff-intervenor who shares citizenship with a defendant. See Deere & Co. v. Diamond Wood Farms, 152 F.R.D. 158, 160 (E.D.Ark. 1993);

Yorkshire Partnership v. Pacific Capital Partners, 154 F.R.D. 141, 142 (M.D.La. 1993); MCI Telecommunications Corp. v. Logan Group, 848 F.Supp. 86, 87-89 (N.D.Tex. 1994); Manhattan Fire & Marine Ins. Co. v. Northwestern Regional Airport Comm'n, 1993 U.S. Dist. LEXIS 6858 at *4 (W.D.Mich. March 25, 1993). See also Krueger v. Cartwright, 996 F.2d 928, 933 n.6 (7th Cir. 1993) (§1367(b) would have deprived court of supplemental jurisdiction over claim of party who shared citizenship with defendant in diversity action, had party moved to intervene as plaintiff).

We are aware of only one case to the contrary. See Colonial Penn Ins. Co. v. American Centennial Ins. Co., 1992 WL 350838 at *3-4 (S.D.N.Y. 1992).

Leading commentators generally agree that in a diversity action, §1367(b) eliminates supplemental jurisdiction over claims of plaintiff-intervenors who share citizenship with a defendant. See 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure, §1917 at 47 (1994 Supp.) (Section 1367(b) "specifically prohibits the exercise of [supplemental] jurisdiction in diversity cases for persons seeking to intervene as plaintiffs under Rule 24"); 3B James Wm. Moore et al., Moore's Federal Practice ¶24.18 (2d ed. 1993), at 24-182 ("§1367(b) makes one change in prior practice by eliminating supplementary jurisdiction over a party who intervenes, even if by right, as a plaintiff in a diversity action if that party does not meet the requirements for diversity jurisdiction"); 28 U.S.C.A. §1367 (1993), David Siegel, Practice Commentary, "The 1990 Adoption of

§ 1367, Codifying 'Supplemental' Jurisdiction" ("Practice Commentary"), at 833.

## 1. Alignment

Before rushing to deny Sylvan's bid to participate in this action, however, we must consider a fundamental principle of federal jurisdiction, a principle associated with, but not limited to, diversity jurisprudence. In determining the alignment of the parties for jurisdictional purposes, the courts have a "duty" to "'look beyond the pleadings and arrange the parties according to their sides in the dispute.'" Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941) (quoting Dawson v. Columbia Trust Co., 197 U.S. 178, 180 (1905)). Opposing parties must have a "'collision of interests'" over the "'principal purpose of the suit.'" Id. (quoting Dawson, 197 U.S. at 181 and East Tennessee, V. & G. R. v. Grayson, 119 U.S. 240, 244 (1886)).

In this circuit we have described the alignment inquiry as one which "obliges the court to penetrate the nominal party alignment and to consider the parties' actual adversity of interest." In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation, 15 F.3d 1230, 1240-41 (3d Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 291 (1994). See also Employers Ins. of Wausau v. Crown Cork & Seal Co., 905 F.2d 42, 46 (3d Cir. 1990).

In Texas Eastern, we determined that a district court had "erroneously reasoned that realignment was a principle associated exclusively with diversity jurisdiction." 15 F.3d at 1242 (emphasis added). Realignment "in fact represents a broader

principle of judicial interpretation of statutes conferring jurisdiction in federal courts, where the statutory conferral of jurisdiction is predicated upon the adversarial relationship of the parties." Id. at 1240. Thus, "where party designations have jurisdictional consequences," we must align the parties before determining jurisdiction. Texas Eastern, 15 F.3d at 1241 (realigning partes for jurisdictional analysis under Foreign Sovereign Immunities Act, 28 U.S.C. §1330). See also Chicago, R. I. & P. R. Co. v. Stude, 346 U.S. 574 (1954) (realigning parties for jurisdictional analysis under the removal statute, 28 U.S.C. §1440).

Under §1367(b), party designations clearly have profound jurisdictional consequences. In two recent cases we have noted the strikingly different treatment §1367(b) affords the claims of plaintiffs as opposed to those of defendants. See Texas Eastern, 15 F.3d at 1237-38; Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399 (3d Cir. 1993). See also Practice Commentary at 832 ("[§1367(b)] is concerned only with efforts of a plaintiff to smuggle in claims that the plaintiff would not otherwise be able to interpose . . . The repetition of the word 'plaintiff' at several rule-citing junctures in subdivision (b) makes this clear"). Accordingly, we must align the parties before applying §1367(b).

The "principal purpose" of the suit by DEFCO and National Housing is to enforce their agreements with Alpha. Both Alpha and Sylvan seek to set aside the agreements, paying at most the "equitable compensation" required by 15 Pa.C.S. §5503(a).

Although Sylvan's claim nominally opposes Alpha, in fact the basic interests of Alpha and Sylvan coincide with each other and collide with those of DEFCO and National Housing over the principal issue of the case. The "actual adversity of interest" pits Alpha and Sylvan against DEFCO and National Housing. Consequently, Sylvan must be aligned with Alpha as a defendant. Sylvan's motion to intervene should be treated as raising a cross-claim against Alpha and a counterclaim against DEFCO and National Housing.

**2. Counterclaims and cross-claims of an intervenor-defendant**

The plain language of §1367(b) limits supplemental jurisdiction over claims of <u>plaintiffs</u> against "persons made parties under Rule 14, 19, 20, or 24," and of parties who join or intervene <u>as plaintiffs</u> pursuant to Rule 19 or 24. 28 U.S.C.A. §1367(b). The section has little to say about defendants.

We have twice held that in a diversity action, the district court has jurisdiction over a defendant's counterclaim against non-diverse parties joined as third-party defendants to the counterclaim. <u>Texas Eastern</u>, 15 F.3d at 1237-38; <u>FDIC v. Bathgate</u>, 27 F.3d 850, 874 (3d Cir. 1994). In <u>Texas Eastern</u> we specifically pointed out that §1367(b) "by its terms" does not extend to a defendant's counterclaims, and further that the joinder of "non-diverse counterclaim defendants do[es] not destroy diversity jurisdiction . . . because there is complete diversity of citizenship between the original parties." <u>Texas Eastern</u>, 15 F.3d at 1238.

Similarly, in Janney Montgomery Scott, an investment banker sued an obligor for breach of contract in a diversity action. In holding that a co-obligor was not a necessary party to the action, we stated that if defendant moved to implead the co-obligor on a claim for contribution, the district court would have supplemental jurisdiction, despite the common citizenship of the defendant/third-party plaintiff and the third-party defendant. Janney Montgomery Scott, 11 F.3d at 412, n.15.

When faced by a party alignment very similar to the one here, the district court in Colonial Penn concluded that §1367(b) did not eliminate jurisdiction over a claim asserted by a non-diverse intervenor against the original plaintiff. The district court aligned the intervenor as a defendant though the party called itself a plaintiff, treated its claim as a counterclaim, and exercised jurisdiction. 1992 WL 350838 at *3-4. See also Practice Commentary at 833 (suggesting §1367(b) does not eliminate supplemental jurisdiction over counterclaim raised by non-diverse defendant-intervenor).

We are aware of only one case in which a court considered the application of §1367(b) to a cross-claim by one co-defendant against another, non-diverse co-defendant, where federal jurisdiction over the original claims depended on §1332. There, a district court held that §1367(b) does not eliminate supplemental jurisdiction. Meritor Sav. Bank v. Camelback Canyon Investors, 783 F.Supp. 455, 457 (D.Ariz. 1991).

Considerations of judicial economy also counsel in favor of limiting §1367(b) to its plain language, rather than extending

its jurisdictional bar to claims raised by intervening defendants.  Where an intervenor's claims are so entangled with the original claims and parties, banishing the non-diverse claim to state court would not serve the goal of judicial efficiency,

Finally, we have held that the 1990 Judicial Improvement Act codified the Supreme Court's treatment of ancillary jurisdiction. Texas Eastern, 15 F.3d at 1237-38 and n.7.  Extending §1367(b) to bar a counterclaim or cross-claim by an intervening defendant would contradict the pre-1990 common law of "ancillary jurisdiction," which encompassed counterclaims by a defending party pulled into court against his will, as well as claims by another person whose rights might be irretrievably impaired unless he could assert them in an existing federal court action. Owen Equipment and Erection Co. v. Kroger, 437 U.S. 365, 375-76 (1978).  As discussed infra, applicant's rights could be irretrievably impaired if it is excluded from the instant proceeding.

We conclude that §1367(b) does not deprive the district court of supplemental jurisdiction over a counterclaim or cross-claim raised by an intervening defendant, even where the intervenor shares citizenship with an original party.

**B. §1367(a)**

Turning to §1367(a) itself, the parties do not dispute that district court had original jurisdiction over the claims against Alpha brought by DEFCO and National Housing, pursuant to 28 U.S.C. §1332.  We conclude easily that because the claims of DEFCO, National Housing, and Sylvan all concern performance of

the agreements with Alpha, Sylvan's claims are "so related to claims in the original action . . . that they form part of the same case or controversy."

Having determined that (1) the jurisdictional principle of alignment applies to §1367(b); (2) proper alignment requires us to treat applicant as a defendant; (3) §1367(b) does not eliminate supplemental jurisdiction over a cross-claim or counterclaim raised by an intervening defendant; and (4) applicant has satisfied the elements of §1367(a), we conclude that a failure to exercise supplemental jurisdiction over Sylvan's claims would be an abuse of discretion.

### III.

Sylvan moved to intervene pursuant to Fed. R. Civ. P. 24(a)(2).[1]  Rule 24(a) authorizes intervention where
> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

Alcan Aluminum, 25 F.3d at 1181.

---

1Rule 24(a)(2)  provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

DEFCO and National Housing concede that Sylvan's application is timely and that it has an interest in the transactions which are the subject of the litigation. Plaintiffs' Brief at 8. To address the final two elements of Sylvan's proof, however, we must clarify the interest conceded by plaintiffs.

Sylvan asserts it has an interest "in maintaining Alpha's continued viability and tax exempt status in addition to insuring [sic] that Alpha acts in accordance with its corporate purposes and powers." Intervenor's Brief at 11. We agree that Sylvan shares with Alpha an interest in the latter's "continued viability," which may be threatened by specific performance of the contracts, as well as limiting Alpha to actions authorized by its charter and by-laws.

Regarding defendant's tax-exempt status, the same statute that confers the exemption also mandates that "no part of the net earnings of [the corporation] inures to the benefit of any private shareholder or individual." 26 U.S.C.A. §501(c)(3) (1988). DEFCO is itself a nonprofit corporation, so its contract with Alpha may comply with the private inurement rule; on the other hand, the text of the contracts may violate the rule. See App. at 18, 21, 27-28. We express no opinion on this ultimate issue, nor as to whether partial payment on the contracts violates §501(c)(3).

Sylvan also refers us to unspecified U.S. Department of Treasury regulations which may be implicated by Alpha's contracts. In its Answer, Alpha invoked "OMB A-122." App. at 41. We take this as a reference to Office of Management and

Budget Circular A-122, "Cost Principles for Nonprofit Organizations," 45 Fed.Reg. 46022 (July 8, 1980). Neither Alpha nor Sylvan refers to a particular passage in this lengthy document, but we note that the Circular mandates that only "reasonable" costs for professional services are allowable uses of certain government grants, contracts or awards. Id., 45 Fed.Reg. at 46023, 46031. Presumably Alpha and Sylvan wish to argue that the agreements with DEFCO and National Housing provide "unreasonable" compensation for professional services, as the government defines "reasonable," and thus court-ordered payment of "unreasonable" compensation would violate the Circular. We again express no opinion as to whether performance of the contracts has or would violate OMB Circular A-122. Whether the threat arises under §501(c)(3) or OMB Circular A-122, we do agree that Sylvan has an interest in preserving defendant's tax exemption.

## A. impairment of interest

We have held that the third element of intervention pursuant to Rule 24(a)(2) requires us to assess the practical consequences of the litigation. Incidental effects on legal interests are insufficient; "rather, there must be 'a tangible threat' to the applicant's legal interest." Brody, 957 F.2d at 1122-23 (quoting Harris v. Pernsley, 820 F.2d 592, 601 (3d Cir.), cert. denied, 484 U.S. 947 (1987)). We have also pointed out that the possibility of a subsequent collateral attack by an applicant will not preclude an applicant from demonstrating that his interest would be impaired, particularly in light of "our policy

preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." Brody, 957 F.2d at 1123.

The instant litigation presents a "tangible threat" to Sylvan's interest in the preservation of Alpha's tax exemption and in the corporation's continued viability. Moreover, an adjudication of Alpha's obligations to DEFCO and National Housing could preclude Sylvan from maintaining a state court action pursuant to 15 Pa.C.S. §5503 to ensure that Alpha acts pursuant to its corporate powers and purposes. Thus, Sylvan's legal interests could be impaired by disposition of the instant case.

## B. Inadequacy of representation

Finally, an applicant has "'[t]he burden, however minimal . . . to show that his interests are not adequately represented by the existing parties.'" Brody, 957 F.2d at 1123 (quoting Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir. 1982)).

In its Answer, Alpha does not defend on the grounds that its contracts with DEFCO and National Housing are void as illegal. App. at 40-42.[2] The Pennsylvania Supreme Court applies "the general rule that an agreement which violates a provision of a statute, or which cannot be performed without violation of such a provision, is illegal and void." American Ass'n of Meat Processors v. Casualty Reciprocal Exch., 588 A.2d 491, 495, 527 Pa. 59, 68 (1991). An illegal contract can never provide the

---

[2]Alpha does raise the defense of impossibility of performance because the "trust agreements" themselves prevent private inurement. See Answer ¶38, App. at 41.

basis for a cause of action: "The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them."  Id. (quoting Dippel v. Brunozzi, 74 A.2d 112, 114-15, 365 Pa. 264 (1950)).  Alpha is not barred from contending that the contracts violate §501(c)(3) or OMB Circular A-122, but its Answer does not set forth the defense.[3]

If the district court determines that Alpha's contracts violated §501(c)(3) or OMB Circular A-122, however, the contracts might still be enforceable; Alpha would simply lose its tax exemption.  Hence Sylvan wishes to argue that, even if not void as illegal, Alpha's contracts are voidable as unauthorized by its corporate charter or by-laws.  See, e.g., Bolduc v. Board of Supervisors, 618 A.2d 1188, 1190-91, 152 Pa.Commw. 248 (Pa.Commw. 1992)(contract voidable when entered into by township acting beyond its corporate powers), appeal denied, 625 A.2d 1195, 533 Pa. 662 (1993).  Alpha has not and may not raise the defense of ultra vires.  15 Pa.C.S. §5503; Downing v. School Dist., 61 A.2d 133, 138, 360 Pa. 29, 40 (1948)("a corporation which has received and retained the benefits and advantages of a contract should not be allowed to escape its obligations upon a plea of ultra vires"); Wagner v. Somerset County Memorial Park, Inc., 93 A.2d

---

[3]Under the Pennsylvania and federal rules, illegality is an affirmative defense which must be pleaded, but under Pennsylvania law the defense is not waived by failure to plead it. Fed.R.Civ.P. 8(c); Pa.R.Civ.P. 1030(a); American Ass'n of Meat Processors, 588 A.2d at 495-96.

440, 442, 372 Pa. 338 (1953); American Mut. Liability Ins. Co. v. Bollinger Corp., 402 F.Supp. 1179, 1186 (W.D.Pa. 1975).

Sylvan alleges that defendant's charter empowers it to undertake only those activities permitted by §501(c)(3), and thus a transaction yielding private inurement would be ultra vires. See Motion to Intervene, App. at 71-72.[4] See also By-Laws, Supplemental Appendix ("S.A.") at 143. In addition, Sylvan alleges that the charter authorizes Alpha to pay only reasonable compensation for services rendered. App. at 72. See also By-Laws, S.A. at 144.

Consequently, we conclude that Alpha has not and cannot adequately represent Sylvan's interests, as defendant has failed to raise the defense of illegality and is statutorily prohibited from arguing that the contracts are ultra vires. In sum, Sylvan has satisfied its burden under Rule 24(a)(2), and it was an abuse of discretion to deny its motion for intervention.

IV.

For the foregoing reasons we will reverse the order of the district court and remand for further proceedings consistent with this opinion.

---

[4]The appellate record does not include the corporate charter.